JOHN J. McILHINNEY and ADELENE McILHINNEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent McIlhinney v. Commissioner
Docket Nos. 5670-77, 10369-77, 10439-77, 10441-77.
United States Tax Court
T.C. Memo 1979-473; 1979 Tax Ct. Memo LEXIS 54; 39 T.C.M. (CCH) 554; T.C.M. (RIA) 79473; November 28, 1979, Filed John F. Kennedy, for the petitioners. Gordon Moore, II, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' income tax as follows: Docket No. 5670-77 (McIlhinney)
Year
Deficiency
1973
$5,249
Docket No. 10369-77 (Duff)
Year
Deficiency
1973
$9,113
1974
6,295
Docket No. 10439-77 (Ryan)
Year
Deficiency
1973
$7,120
1974
6,459
Docket No. 10441-77 (Carr)
Year
Deficiency
1973
$9,458
1974
6,233
Concessions having been made by the parties in Docket No. *56 6570-77 and by petitioners in Docket No. 10439-77, the sole issue for decision is whether net operating losses sustained by Street Road Shopping Center, Inc. during the years 1973 and 1974 are deductible from the income of its shareholders, petitioners in this case, as losses allowed to shareholders of an electing small business corporation. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing their petitions, petitioners were residents of Pennsylvania. Street Road Shopping Center, Inc. ("SRSC") is a Pennsylvania corporation, incorporated in September 1963, with its principal place of business in Feasterville, Pennsylvania. At all times material to this case, SRSC had 3,000 shares of common stock (its only class of stock) issued and outstanding as follows: shareholder
No. of Shares
John J. McIlhinney
1,650
Joseph J. Ryan
600
Edward J. Duff
375
Harold Carr
375
3,000
SRSC filed a timely election to be taxed as a small business corporation under sections 1371 through 1379[2] for the years in issue. SRSC maintained its books and records and filed its federal income tax return using the accrual *57 method of accounting and a fiscal year ending August 31. From September 1, 1972, through August 31, 1974, SRSC owned and operated the Bucks County Mall Shopping Center ("Mall"). The Mall contained approximately 420,000 square feet of building space on 28 acres of land with 1,900 feet of highway frontage. Part of the Mall was enclosed; the enclosed area contained 32,000 square feet of "public area." Approximately 60 stores rented space in the enclosed portion of the Mall and seven additional stores formed a strip center adjacent to the enclosed area. Additionally, the Mall included a free-standing car wash, a gas station, a tire store and 8 stores located in an office building. During the years in issue, the occupancy rate of the Mall was approximately 98 percent. The space occupied by the stores was leased by SRSC to the stores under a standard form lease. Tenants paid a fixed minimum rent; however, if a tenant's gross receipts exceeded a certain minimum amount specified in the lease, that tenant also paid a percentage rent based on gross receipts. In addition *58 to rent, tenants were required to pay a portion of the Mall's operating cost. The portion of operating cost charged to each tenant was based on a ratio of the total area of the premises rented by the tenant to the total area of all rentable enclosed space. "Operating cost" was defined as the total cost incurred in operating and maintaining the common facilities actually used or available for use by a tenant and his employees, agents, servants, customers and other invitees of the tenant, including but not limited to heating, lighting, air conditioning, gardening and landscaping, the cost of public liability and property damage insurance, repairs, line painting, lighting, sanitary control, security, removal of snow, trash, rubbish, garbage and other refuse (except from the tenant's premises), and the cost of personnel to implement these services, to direct parking, and to police and protect the common facilities. "Common facilities" was defined as all areas, space, equipment and special services provided by SRSC for the common use of the tenants, their employees, agents, servants, customers and other invitees, including but not limited to parking areas, access roads, driveways, retaining *59 wall, landscaped area, truck serviceways, loading docks, pedestrian malls, courts, stairs, ramps and sidewalks, comfort and first-aid stations, washrooms and parcel pick-up stations. SRSC was responsible for maintaining the common areas in good repair and condition and for keeping the common areas reasonably free os snow, ice, refuse and other obstructions. In addition, SRSC was required to maintain the lights in the parking area and keep the parking area lit during the hours of darkness that the Mall was open for business. At its own expense, SRSC was responsible for the maintenance and repair of the exterior and all structural portions of the leased premises, support structures and the roof. In addition, SRSC's financial responsibilities included the maintenance and repair of plumbing, water lines and electrical wiring to the point where these items entered the interior of the building. On the other hand, tenants paid for maintenance, repair and painting of the interior and all non-structural parts of their leased premises. The tenants also paid their individual store utility bills (gas and electric) directly to the utility companies. To carry out its operating responsibilities, *60 SRSC employed the following staff: John J. McIlhinney, president William Taylor, mall manager Edward J. Riggs, assistant mall manager and controller Marie Dooley, bookkeeper Jacqueline Taylor, janitor John J. McIlhinney, Jr., engineer and trouble shooter Four maintenance men Part-time carpenters and carpenter helpers. The mall manager was employed on a full-time basis. His duties included handling public and tenant complaints, supervising lost and found articles and children, overseeing cleaning and maintenance crews, overseeing security personnel, and administering first aid assistance to Mall customers. SRSC retained Fox Security to furnish security personnel. Security services were provided from approximately noon until midnight. Generally, there was only one guard on duty. During the years in issue, SRSC engaged in various activities to promote business within the Mall. These promotional activities included a car raffle, band concerts, visits by Santa Claus, glee clubs concerts, and art shows. [3] Competing malls engaged in the same type of promotional activities. *61 During the fiscal year ended August 31, 1973, SRSC received gross income of $840,264.35 (of which $830,482.44 was rental income from tenants who leased space in the Mall). For the fiscal year ended August 31, 1974, SRSC received gross income of $715,716.63 (of which $709,272.98 was rental income from Mall tenants). Approximately $13,618 and $10,521 of rental income received during fiscal 1973 and 1974 represented percentage rent. Through fiscal 1974, SRSC had never shown a profit. In 1975 the bank took over management of the Mall, and it was sold to satisfy SRSC's debts shortly thereafter. On its federal tax returns for its fiscal years 1973 and 1974 SRSC reported net losses of $142,225.58 and $123,844.25 respectively. These losses were allocated to the shareholders of SRSC as follows: Shareholder
Share of Loss
Year Ended
Year Ended
8/31/73
8/31/74
John J. McIlhinney
$ 78,224.07
$ 68,114.34
Joseph J. Ryan
28,445.11
24,768.85
Edward J. Duff
17,778.20
15,480.53
Harold Carr
17,778.20
15,480.53
$142,225.58
$123,844.25
On their joint returns for 1973 and 1974 petitioners deducted the amounts listed above, except that the amount of *62 deduction for petitioners Harold and Priscilla Carr and petitioners Edward J. and Nancy Duff for 1974 was $12,221.80, due to the limitation imposed by section 1374(c)(2). In his notice of deficiency, respondent disallowed the entire amount of the loss deductions claimed by each of the petitioners [4] because he determined that SRSC's election to be taxed as a small business corporation had terminated by reason of SRSC having received more than 20 percent of its gross receipts from passive investment income in 1973 and 1974. OPINION The issue in this case is whether the net operating losses sustained by Street Road Shopping Center, Inc. ("SRSC") during fiscal years ending August 31, 1973 and 1974 are deductible from the income of its shareholders, the petitioners, as losses allowed to shareholders of an electing small business corporation. Sections 1371 through 1379, which comprise subchapter S, allow certain electing small business corporations to pass through their *63 net operating losses to their shareholders. Specifically, the question in this case is whether SRSC's election terminated under section 1372(e)(5) because SRSC received more than 20 percent of its gross receipts from "rents" in 1973 and 1974. Section 1372(e)(5)(A) states the general rule that a subchapter S election shall terminate for any year in which a corporation's passive investment income exceeds 20 percent of its gross receipts. Section 1372(e)(5)(C) describes "passive investment income" as "gross receipts derived from * * * rents * * *." The term "rents" is defined in section 1.1372-4(b)(5)(vi), Income Tax Regs., as follows: (vi) Rents. The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use, property (whether real or personal) of the corporation. The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as *64 for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. * * * It is indisputable that more than 20 percent of SRSC's receipts in its fiscal years 1973 and 1974 arose from tenant's payments for the use and occupancy of SRSC's property. However, petitioners contend that such receipts are not rents within meaning of the regulations because SRSC rendered significant service for the convenience of its tenants other than those customarily rendered in the connection with the rental of mall space. Therefore, petitioners conclude, SRSC's election to be taxed as a subchapter S corporation *65 did not terminate in 1973 or 1974 because its passive investment income did not exceed 20 percent of its gross receipts. In support of their contentions, petitioners point out that SRSC remained responsible for the heating, air-conditioning, snow and trash removal, cleaning, maintenance, etc. of the public areas of the enclosed portion of the Mall. While some of these services are not specifically described by section 1.1372-4(b)(5)(vi), Income Tax Regs., we believe that services such as general maintenance, cleaning of public areas, and snow removal were implied by the regulations. See City Markets v. Commissioner, 433 F. 2d 1240 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. Moreover, the maintenance services provided by SRSC were no different than those normally required to maintain similar premises in good rental condition. See Bramlette Building Corp. v. Commissioner, 52 T.C. 200, 205 (1969), affd. 424 F. 2d 751 (5th Cir. 1970). We accordingly do not consider these activities, whether significant or otherwise, as non-customary services rendered by SRSC to its tenants within the meaning *66 of the regulations. Second, petitioner point out that SRSC engaged in activities (such a car raffle and providing band concerts and visits by Santa Claus) designed to promote the business of SRSC's tenants. While these services may have been primarily for the benefit of mall tenants, the record fails to disclose that they were any different than those customarily rendered in connection with rental of stores by competing malls. Furthermore, petitioners made no showing as to the frequency of these activities, or as to how such activities were a significant part of SRSC's operation in terms of money or employee's efforts. See Feingold v. Commissioner, 49 T.C. 461, 465-467 (1968). Third, petitioners point out that SRSC provided a security force and a mall manager. The security force was present at the Mall from approximately noon until midnight each day and usually consisted of one guard. The mall manager was employed on a full-time basis to oversee the maintenance and cleaning crews, to answer complaints from tenants and the public, to supervise lost and found property and children, and to administer first did. Petitioners, on whom the burden of proof lies (Rule *67 142(a), Tax Court Rules of Practice and Plrocedure), presented no evidence as to whether these services were primarily for the benefit of the tenants or as to whether these services were other than those usually and customarily rendered in connection with the rental of stores in a mall. On the state of the record we cannot conclude that they are not essentially the same as those customarily furnished by other mall owners and therefore are considered as services "rendered to the occupants" within the meaning of the regulations. Moreover, petitioners have not demonstrated that the security and mall management services were significant. The tenants of SRSC, in addition to their rent, were responsible for paying the "operating cost" of the Mall. The cost of security was specifically included as an operating cost. The amount of operating cost borne by each tenant was based upon a ratio of the total area of the premises rented by the tenant to the total area of all rentable enclosed mall space. During the years in issue, the occupancy rate of SRSC was approximately 98 percent. Thus, the tenants were obligated to pay for 98 percent of the operating cost of the Mall whereas SRSC bore *68 approximately 2 percent. We fail to see how SRSC's payment of approximately 2 percent of the cost of security services could in any way be considered significant. We do not know whether the cost of the mall manager was included in these operating costs. Even if it were not and as a result SRSC were responsible for payment of the mall manager's salary, petitioners have not demonstrated how this service was significant in relations to their operations. In summary, petitioners have not shown that the services provided were other than those usually or customarily rendered in connection with the rental of mall space or that the services in any way represented a significant part of SRSC's operations. We therefore hold that the rental income received by SRSC for the fiscal years 1973 and 1974 was "rent" within the meaning of section 1.1372-4(b)(5)(vi), Income tax Regs. Since more than 20 percent of SRSC's gross receipts for the fiscal years 1973 and 1974 was passive investment income, SRSC's election to be taxed as a small business corporation was terminated. Consequently, petitioners (SRSC's shareholders) may not deduct SRSC's net operating losses from *69 their individual income on their income tax returns for 1973 and 1974. Decisions will be entered for the respondent in docket nos. 10369-77, 10439-77 and 10441-77. Decision will be entered under Rule 155 in docket no. 5670-77. Footnotes
1. Cases of the following petitioners are consolidated herewith for purposes of trial, briefing and opinion: Edward J. Duff and Nancy Duff, docket no. 10369-77; Joseph J. Ryan and Marie Ryan, docket no. 10439-77; and Harold Carr and Priscilla Carr, docket no. 10441-77.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
3. Mr. McIlhinney, who testified regarding these activities, failed to produce records at trial evidencing services rendered by SRSC although he had been properly served with a subpoena duces tecum.↩
4. The loss deduction claimed by petitioners John J. and Adelene McIlhinney for 1974 is not at issue in this case.↩