**BRAMLETTE BUILDING CORPORA-TION, Inc., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent-Appellee.**

**No. 28117**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

April 20, 1970.

Rehearing Denied May 19, 1970.

752

John M. Smith, Longview, Tex., for petitioner-appellant.

Johnnie M. Walters, Asst. Atty. Gen., Harry Baum, Lee A. Jackson, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., K. Martin Worthy, Chief Counsel, Richard P. Milloy, Atty., Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before THORNBERRY, MORGAN and CARSWELL, Circuit Judges.

THORNBERRY, Circuit Judge.

■ This is an appeal from a decision of the Tax Court holding that the Internal Revenue Service had properly assessed a deficiency of $5,423.31 against the taxpayer. Three separate issues are involved in the case. We conclude that the Tax Court determined all issues of law correctly and that its fact findings are not clearly erroneous, and we therefore affirm.[1]

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties

Taxpayer owns and operates an office building as its only source of income. Its stockholders had elected during the years in issue, 1963 and 1964, to have the corporation treated under Subchapter S,[2] which provides that small corporations meeting certain requirements may be taxed as if they were partnerships. One of the requirements for Subchapter S status is that not more than 20 percent of the taxpayer's gross receipts may be passive investment income, under which are included "royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities." Int.Rev.Code of 1954, § 1372 (e) (5). Since the taxpayer in fact receives *all* its income from rental payments for office space, the Tax Court held that the election of Subchapter S status was improper.

■ Taxpayer admits the source of its receipts, but argues that these rents are not really "rents" within the meaning of the regulations under § 1372(e) (5). The regulations state that the term "rent" does not include payments for room occupancy where the owner provides "significant services  *  *  * other than those customarily and usually rendered" in connection with rented space. Treas.Reg. § 1.1372–4(b) (5) (vi) (1965). Taxpayer has attempted to show that it furnishes "significant services" to its tenants by attracting other tenants that will help their business. This "service," however, is clearly not of the type that the regulation contemplates, since it speaks primarily of room services rendered by hotels, motels, and like businesses. Other services, such as porter services, maid service, and repair service, which are furnished by the taxpayer, are shown by the record not to be different from those furnished by similar office buildings. Moreover, the regulation states that "payments for the use or occupancy  *  *  * of offices in an office building, etc., are generally

'rents' under section 1372(e) (5)." We conclude that the Tax Court correctly held that more than 20 percent of taxpayer's income was "rent" within the meaning of § 1372. It follows that the court's termination of taxpayer's Subchapter S status was proper.

■ A second issue in the case concerns income from a parking lot, actually owned by taxpayer's president, but confused with taxpayer's property during the years in question. Taxpayer collected parking fees from this lot, credited them to its accounts, and used the proceeds in its business. The Tax Court held that taxpayer, which keeps accounts on a cash basis, had collected these parking fees under a claim of right during the taxable years and that the fees were consequently includable in its taxable income. This result is clearly correct if the claim of right doctrine is applicable. *See* North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197. We hold that the Tax Court was correct in applying the doctrine to this case. The claim of right doctrine depends not upon the legitimacy of the claim but upon a taxpayer's treatment of the funds as his own, and consequently the fact that the claim was mistaken does not prevent the operation of the doctrine where the taxpayer has actually had the benefit of the funds in business, as here. *See* Healy v. Comm'r of Internal Revenue, 1953, 345 U.S. 278, 282, 73 S.Ct. 671, 97 L.Ed. 1007. The taxpayer is, of course, entitled to a deduction in any year in which it is obliged to repay the funds.

■ The final issue in the case concerns a claimed deduction for salary paid to taxpayer's president. The corporation did in fact pay sums of money to its president during the years in question, but the payments were in the form of dividends. The Tax Court held that "during the years 1963 and 1964 [taxpayer] paid no salary" to its president.

in writing. *See* Murphy v. Houma Well Service, 5th Cir. 1969, 409 F.2d 804, Part I; and Huth v. Southern Pacific Company, 5th Cir. 1969, 417 F.2d 526, Part I.

2. Int.Rev.Code of 1954, §§ 1371–1377.

We recognize that whether a payment is compensation or dividend is a question of fact, that the mere labelling of a payment as a dividend is only evidence of its character, 1 Mertens, Law of Federal Income Taxation § 9.06 (1969), and that the label should be accorded even less weight than usual in this case since dividends and salary in a Subchapter S corporation are treated similarly for tax purposes. Nonetheless, we cannot hold that the determination of the Tax Court is clearly erroneous.[3] Some of the factors to which a court should look in determining whether a payment was a dividend or salary have been listed as follows:

> In determining whether the amounts paid were compensation for services or were distributions of profits, all the facts and circumstances must be considered. Thus, the fact that the services were no more than anyone who was a large stockholder and a director in the enterprise would perform has been emphasized. It may further be significant that there is no corporate authorization for the payments as salaries. The courts will give consideration to book entries, whether amounts are withdrawn periodically or in a lump sum, and whether the payments bear a relationship to the earnings of the corporation, whether all the stockholder-employees receiving equal amounts rendered equal services, and to the relation between net income and the compensation paid.

1 Mertens, Law of Federal Income Taxation § 9.18 (1969). The evidence shows that taxpayer is a close corporation, with its president owning 99.86 percent of its stock. The supervisory services that the president performed are of the kind that might be expected of a major shareholder who would look to dividends rather than salary for his compensation.

Furthermore, the evidence shows that the payments were made not in proportion to the services the president rendered but rather in proportion to the profits of the corporation. This fact is strong evidence that the payments were dividends, and it suffices, together with the other facts, to support the determination of the Tax Court that the proposed salary deduction should be denied. The judgment must be affirmed.

---

3. We also agree with the Tax Court that taxpayer's reliance upon Walter J. Roob, 1968, 50 T.C. 891, is "entirely misplaced." That case concerned adjustment of corporate payments made to members of the same family in an impermissible attempt to split income. It has nothing to do with the question whether the payment at issue here is salary or a dividend.