**CITY MARKETS, INC., et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 20155.

United States Court of Appeals,
Sixth Circuit.

Nov. 10, 1970.

James B. Jalenak, Memphis, Tenn., for petitioners-appellants; J. Alan Hanover, Hanover, Hanover, Hanover, Walsh & Barnes, Memphis, Tenn., on brief.

William K. Hogan, Atty., Dept. of Justice, Washington, D. C., for respondent-appellee; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Bennet N. Hollander, Attys., Dept. of Justice, Washington, D. C., on brief.

Before CELEBREZZE and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Appellants, City Markets, Inc., and the individual shareholders thereof, all of whom we designate collectively as the taxpayer, or taxpayers, ask reversal of a decision of the Tax Court of the United States identified as T.C. Memo 1969–202. Appellee's brief correctly states the issue involved as follows:

"Whether the Tax Court correctly held that taxpayer's election under Section 1372(a) of the 1954 Code, under which a corporation's income is taxed directly to its shareholders, was terminated under Section 1372(e) (5) of the 1954 Code because taxpayer [City Markets] received, during the tax years in issue, more than 20 percent of its gross receipts from rents."

Section 1371 of the Internal Revenue Code defines what type of business enterprise may be considered a "small business corporation" for income tax purposes. City Markets, Inc., met such definition. Section 1372(a) of the 1954 Code allowed a small business corporation to elect to have its income taxed directly to its shareholders. City Markets, Inc., had made such election and its tax returns for the years involved were made on that basis. Section 1372 (e)(5)(A) provides that such election shall terminate if "for any taxable year" the small business corporation has gross receipts "more than 20 percent of which is passive investment income." Section 1372(e)(5)(C) provides that "passive investment income" means and includes,

with other sources of income, gross receipts derived from "rents." The Commissioner of Internal Revenue held that for the three fiscal years ending on the last days of February in 1964, 1965 and 1966, respectively, more than 20 percent of City Markets' gross receipts had come from rents and assessed deficiencies for such years. The Tax Court sustained the action of the Commissioner.

We affirm.

During the taxable years involved, appellant, City Markets, Inc., owned a "farmers' market" located on a rectangular city block in Memphis, Tennessee. Paralleling the streets on the east and west sides of its premises, appellant maintained two long roofed structures known as the east and west market buildings. These buildings were primarily occupied by vendors of farm produce and flowers, who displayed their goods on wooden benches in separate booths. They also housed a meat market, automobile repair shop, garden shop, health food store, and some restaurants. Paralleling the street to the south were a series of connected brick buildings, separated by walls with no common passageways. During the years involved, the tenants of these buildings included a night club, restaurant, liquor store, real estate office and drug store. Parking space was provided in the front and rear of the brick buildings and in front and between the two market buildings.

The income of City Markets consisted entirely of the amounts paid to it by the various tenants who occupied the facilities described. Certainly these payments, in ordinary parlance, would constitute rent which by statutory definition—Section 3172(e) (5) (C)—constitutes "passive investment income." Appellants, however, rely upon Regulation § 1.1372–4(b)(5)(iv) to claim that the monies received by them were not "rent" because City Markets rendered "significant services" to its tenants in addition to the latter's mere occupancy of the leased premises. This regulation provides in part:

"Rents. * * * The term 'rents' does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant." 26 C.F.R. § 1.1372–4(b)(5)(iv).

Appellants' entire income for the taxable years involved consisted of payments received for leasing the buildings described. Both written and oral leases were used. The Tax Court found that there was no evidence of any oral or written agreements with respect to services, other than that contained in the written leases, held by only some of the tenants, to repair "structural defects." In fact, performance of much of the services was left to the discretion of taxpayer's senior maintenance man. With regard to such services, the Tax Court found that:

"During the taxable years in issue, the corporation employed a maintenance man (Wooley) and an assistant (Fleming). Both men worked full time, six days per week. They were not closely supervised in their work.

"Their activities included cleaning and sweeping and maintaining the five public restrooms, the sidewalks and alleys around the buildings, and some parts of the interiors of the buildings; repairing the parking area pavements; spraying garbage cans with insecticides to keep down flies; unblocking

stopped-up sewer, lines; repairing electrical, heating, and air conditioning equipment; making roof repairs; and replacing broken windows. The tenants were not charged for these services, nor were they charged when Wooley found himself unable to make a needed repair and had to call in outside repairmen.

"Tenants, especially in the market buildings, would often ask Wooley to make alterations in their booths; Wooley would make these alterations, charging nothing for his labor, and charging for materials only if the improvement was not physically attached to the building. Wooley also kept automobiles from parking where they would block the entrances to the inner parking area, and would, on occasion, take telephone messages for tenants and answer questions as to prices by potential customers on the telephone. Neither Wooley nor Fleming helped the tenants load or unload trucks. On occasion, Wooley was called in by a private night patrol engaged by the tenants, in order to check on stores which had been broken into.

"The corporation during the years in issue furnished pest control on a monthly basis. It also advertised its tenants' activities in the yellow pages of the telephone directory and also maintained a large sign advertising the market as a whole."

We agree with the Tax Court that the foregoing did not fit the definition of "services * .* * rendered to the occupant" set out in the quoted regulation. Certainly what City Markets did for its tenants was not, as stated in the regulation, "such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel service, or in tourist homes, motor courts, or motels." Rather, in our view, what City Markets did for its tenants would more sensibly be embraced in the Regulation's further language:

"[T]he furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant."

Some of the services which City Markets provided may not be specifically described by the above language of the Regulation. But such service as spraying garbage cans, occasional alterations of vendors' booths by City Markets' two employees who served the entire complex, the pest control and like services are sufficiently akin to the language of the Regulation as to be implied by it. The advertising in the yellow pages of the telephone directory and the maintenance of a billboard serving all the tenants are not services usually and customarily rendered in connection with the rental of commercial property space, but by themselves they cannot be of the "significance" required by the Regulation. See Max Feingold, 49 T.C. 461, 467 (1967); Bramlette Building Corp. v. C.I.R., 424 F.2d 751, 753 (5th Cir. 1970).

When subchapter S of the Internal Revenue Code was amended in 1966, the purpose of the relevant provision was restated as:

"When the 'pass through' type of tax treatment was provided for corporations, Congress decided to limit the availability of this treatment to small businesses *actively engaged in trade or business*. Therefore, it denied this treatment to corporations with *large amounts of passive income*." S.Rep. No. 1007, 89th Cong., 2d Sess., (1966), reported in 2 U.S. Code Cong. & Adm. News, pp. 2141, 2148 (1966). (Emphasis supplied.)

Appellant taxpayers were landlords and the significant work performed by its two employees was that normally provided by landlords. City Markets' income was "rent" constituting "passive income" within the meaning of 26 U.S.C. § 1372(e)(5). Its election to be taxed as a small business corporation was terminated.

The judgment of the Tax Court is affirmed.