**H. & L. REID, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 38280.**

United States District Court,
E. D. Michigan, S. D.

June 29, 1973.

Edgar W. Pugh, Pugh, Moehlman &
Pugh, Birmingham, Mich., for plaintiff.

Daniel P. Mullarkey, Dept. of Justice,
Tax Div., Washington, D. C., Ralph B.
Guy, Jr., U. S. Dist. Atty., E. D. Mich.,
Detroit, Mich., for defendant.

## MEMORANDUM OF OPINION AND ORDER

KEITH, District Judge.

This is an action for the recovery of
$7,296.90, plus interest thereon, for tax-
es and interest paid with respect to the
tax year 1967. The facts produced at

trial were largely undisputed by the parties. Plaintiff, a Michigan corporation, owned an office building in Birmingham, Michigan. On March 18, 1968, plaintiff timely filed a tax return for the calendar year 1967 as a Subchapter S corporation. Subsequently, the Commissioner of Internal Revenue contested the filing and asserted that plaintiff was not eligible to file as a Subchapter S corporation because it had received more than 20 percent of its gross receipts from rents. Plaintiff denied this assertion. Nevertheless, on April 2, 1971, the Commissioner assessed a deficiency of $7,296.90, plus interest, against plaintiff. This deficiency was satisfied by an advance payment on January 13, 1971. On August 6, 1971, plaintiff timely filed a claim for refund which was denied; and on May 10, 1972, this action was instituted.

The testimony given establishes that plaintiff provided various services for its tenants, most of whom were doctors or dentists. The services included a voluntary mail delivery service to tenants upon request, the maintenance of a common area for office personnel to use during lunch and breaks, emergency janitorial services for doctors whose patients became sick in the offices, and extensive remodeling of offices to meet the special needs of the doctors.

It was also established that Mr. Howard E. Reid, who was president of plaintiff corporation and primarily responsible for managing the building, was very enthralled with his work. The facts disclose that he spent considerable time on the premises and became a close friend of most tenants. Mr. Reid, Mr. DeLyle Service, who operated a janitorial service, and other stockholders, did in fact go out of their way to serve the needs of the tenants. The tenants were not charged for such services.

Plaintiff received all of its 1967 income from the payments made by the various tenants and seeks to report it under the provisions of Sections 1371–1377 (Subchapter S) of the Internal Revenue Code of 1954. Defendant contends that more than 20 percent of plaintiff's income constituted "rents" within the meaning of Section 1372(e)(5) of the Code, and hence, the Commissioner properly denied the plaintiff's attempt to receive Subchapter S treatment. However, plaintiff argues that it provided substantial services to the tenants of its professional office buildings which were beyond those ordinarily provided to tenants of such a building and it is, therefore, entitled to the benefits of Subchapter S because payments received under such circumstances do not constitute "rent" within the meaning of Section 1372(e)(5) of the Code and Section 1.1372–4(b)(iv) of the Treasury Regulations. Thus, the central issue in dispute is whether the money plaintiff received from the tenants was "rent" under the provisions of the Code and Regulations.

Sections 1372–1377 of the Code, which comprise Subchapter S, allow certain "small business corporations" specified in Section 1371 the right to "pass through" taxable income, as well as net operating loss, to shareholders. This election is valid only so long as certain requirements are met. Included among these requirements is the provision in Section 1372(e)(5) which provides that the corporation utilizing the election cannot receive more than 20 percent of its corporate gross receipts from "rent." By enacting this limitation, Congress intended to limit the preferential tax treatment to small businesses which actively engaged in a trade or business and sought to deny the advantages to corporations having "passive income", such as rents, royalties, dividends, etc. See S.Rep.No.1007, 89th Cong., 2d Sess., P. 8 (1966–1 Cum.Bull. 527, 532); H. Rep.No.1238, 89th Cong., 2d Sess., P. 8.

In harmony with this legislative intent, the term "rents" was defined in Section 1.1372–4(b)(5)(iv) of the 1967 Treasury Regulations as follows:

(iv) *Rents. The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use, property (whether real or person-*

*al) of the corporation,* whether or not such amounts constitute 50 percent or more of the gross income of the corporation for the taxable year. The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of main service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. *Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units, or offices in an office building, etc., are generally "rents" under section 1372(e)(5).* Payments for the parking of automobiles ordinarily do not constitute rents. Payments for the warehousing of goods or for the use of personal property do not constitute rents if significant services are rendered in connection with such payments. [Emphasis added.] *

The Treasury Regulations presently state that the term "rents", as defined above is to be referred to as "passive investment income" when determining the source of a corporations gross receipts in accordance with Subchapter S of the Code. Treas.Reg. § 1.1372–4(b)(5)(i).

█ The facts of this case are quite similar to those in City Markets, Inc. v. Commissioner of Internal Revenue, 433 F.2d 1240 (6th Cir. 1970) aff'g 1969 T.C.Memo. par. 69,202, where the Sixth

Circuit Court of Appeals dealt with the same issue of what kind of services are so extraordinary that they allow a corporation to claim the benefits of Subchapter S. In both cases, plaintiffs owned and maintained buildings which took up entire city blocks and derived all of their income for the period in question from leases on parts of the buildings. Also, both plaintiffs provided very few maintenance men to perform various functions without charge, such as cleaning the buildings to keep them in sanitary condition, altering the leased premises to suit tenant needs when requested, assisting with the security for the leased premises, and rendering various other services upon request. Based upon the facts in *City Markets, supra,* the Sixth Circuit Court of Appeals affirmed the Tax Court ruling and held that despite the services rendered, the plaintiff was still primarily a landlord and, therefore, the amounts it received from tenants were "rents" within the meaning of the term as used in Section 1372(e)(5). This Court finds that the same conclusion must be reached in the present case, even though the services provided by plaintiff were exemplary.

█ Plaintiff seeks to establish that it rendered "substantial services" because it provided an extraordinary amount of services to its tenants. However, it is not the amount of services rendered, but the nature or type of services rendered that determines whether the services are "substantial." This is indicated in Bramlette Building Corp. v. Commissioner of Internal Revenue, 424 F.2d 751 (5th Cir. 1970), where a plaintiff who owned an office building was also seeking to be classified as a Subchapter S corporation and the court remarked:

Taxpayer admits the source of its receipts, but argues that these rents are not really "rents" within the meaning of the regulations under § 1372(e)(5). The regulations state that the term "rent" does not include

* (For the regulation in its present form see Treas.Reg. § 1.1372–4(b)(5)(vi).

payments for room occupancy where the owner provides "significant services * * * other than those customarily and usually rendered" in connection with rented space. Treas.Reg. § 1.1372–4(b)(5)(vi) (1965). Taxpayer has attempted to show that it furnishes "significant services" to its tenants by attracting other tenants that will help their business. This "service," however, is clearly not of the type that the regulation contemplates, since it speaks primarily of room services rendered by hotels, motels, and like businesses. Other services, such as porter services, maid service, and repair service, which are furnished by the taxpayer, are shown by the record not to be different from those furnished by similar office buildings. Moreover, the regulation states that "payments for the use or occupancy * * * of offices in an office building, etc., are generally 'rents' under section 1372(e)(5)." 424 F.2d at 753.

Plaintiff in the present case, like the plaintiffs in *City Markets* and *Bramlette*, derived its income for the period in question solely from the leasing of its office building. Although there were exemplary services rendered to the tenants of the building, those services were not the type which would remove plaintiff's gross receipts from the "rent" classification. The tenants were paying "rent" for the use of, or the right to use, plaintiff's real or personal property and were not paying money for services that were (1) primarily for their convenience and (2) other than those usually or customarily rendered in connection with the rental of offices in an office building. See Treas.Reg. § 1.-1372–4(b)(5)(vi).

■ The statutory term "rents" includes services customarily rendered by a landlord. Customary services for rented business property include: janitorial services within and around offices and shops; the removal of trash; the installation and servicing of water coolers and air conditioning equipment; the instal-

lation, alteration and repair of partitions; and the installation and repair of light fixtures and related equipment. See Maloney v. Celebrezze, 337 F.2d 231, at 233 (3d Cir. 1964). Although the record indicates that there may have been an unusual service performed periodically by plaintiff (such as the emergency janitorial service for doctors), this service was not required by lease or provided so extensively as to be substantial or significant and remove plaintiff's gross receipts from the "rent" classification.

In view of the record, this Court finds that plaintiff's income for 1967 was income from "rent"; and, consequently, the Commissioner was correct in denying plaintiff Subchapter S treatment because more than 20 percent of its income came from rent.

It is so ordered.