John D. CROUCH, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 78–2317.

United States District Court,
D. Kansas.

Jan. 12, 1981.

H. Thomas Payne and David K. Martin, Olathe, Kan., George E. Feldmiller and Charles W. German, Stinson, Mag & Fizzell, Kansas City, Mo., for plaintiff.

Robert Horwitz, Tax Division, U. S. Dept. of Justice, Washington, D. C., James P. Buchele, U. S. Atty., Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This case comes before the court for ruling upon motions for summary judgment filed by plaintiff and by defendant. In this action plaintiff seeks refund of taxes plus interest and penalties in the amount of $26,378.95. As grounds for summary judgment, the United States argues (1) that plaintiff as sole shareholder of Seventeen Ventures, Inc., (Seventeen Ventures) was not entitled to deduct the corporation's net operating loss for 1970 because Seventeen Ventures' status as a Subchapter S corporation terminated by operation of law during that year; and (2) that plaintiff was not entitled to deduct interest he paid in 1970 on a loan to Seventeen Ventures. Countering defendant's motion, plaintiff seeks summary judgment for the following reasons: (1) plaintiff is entitled to deduct Seventeen Ventures' 1970 net operating loss on his individual income tax return since rental income received by Seventeen Ventures in 1970 was not "passive investment income" (a) because significant services were provided to tenants, and (b) because the corporation was actively engaged in business operations; and (2) plaintiff is entitled to deduct interest payments made on a loan to Seventeen Ventures (a) because plaintiff was directly and primarily liable for loan payments in 1970, and (b) because a Treasury Regulation allows the deduction. We will summarize the facts of this case before examining the grounds for summary judgment.

### I. FACTS.

Plaintiff, a Kansas resident, is the sole shareholder of Seventeen Ventures, which owns an apartment complex in Sarasota, Florida, known as Boulevard East Apartments. Financing for purchase of the real estate and construction of the apartments was arranged with Guardian Mortgage Investors, with permanent mortgage financing through Metropolitan Life Insurance Co. (Metropolitan Life). Because these two institutions required the borrower to be incorporated, they supplied loan commitment letters to plaintiff in the following manner: a letter from Guardian Mortgage Investors addressed to "Corporation to be formed, c/o John D. Crouch," and a letter from Metropolitan Life addressed to a "Corporation to be named." On September 3, 1969, plaintiff had all stock of a dormant corporation, Seventeen Ventures, issued to him. Plaintiff also had The Fidelity State Bank of Kansas City, Kansas, issue for his personal account irrevocable letters of credit to secure the loan commitment fee and potential cost overruns on the construction project. Kansas Quality Construction, Inc., (Kansas Quality Construction) was hired to build the apartment complex. The following agreements were executed on September 5, 1969: financing agreement between Guardian Mortgage Investors and Seventeen Ventures, construction contract between Kansas Quality Construction and Seventeen Ventures, guarantee to make interest payments on construction loan by Kansas Quality Construction to Guardian Mortgage Investors indemnified by plaintiff, and contract for purchase and sale of real estate to Seventeen Ventures. On September 19, 1969, Seventeen Ventures filed an election for treatment as a small business corporation under Subchapter S of the Internal Revenue Code. Seventeen Ventures filed a tax return for the period ending December 31, 1969, as a Subchapter S corporation.

Near the end of the construction period, on April 1, 1970, an agency agreement was executed between Seventeen Ventures and Jodaco, a corporation in which plaintiff held 90% of the shares. Under this agreement Jodaco operated the apartment complex on a day-to-day basis and provided services to tenants.

Seventeen Ventures filed a regular corporation income tax return for the tax period ending December 31, 1970, instead of a Subchapter S return. On his individual income tax return for 1970, plaintiff deducted interest payments he made to Guardian Mortgage Investors during 1970, but did not deduct Seventeen Ventures net operating loss under Subchapter S. Plaintiff initially paid $9,921.00 in taxes for 1970. Seventeen Ventures, Jodaco, and plaintiff were audited for tax years 1969, 1970, and 1971. The government disallowed the interest deductions on plaintiff's individual return and assessed taxes and interest for 1970 in the amount of $16,995.95, which were paid by plaintiff. Thus, plaintiff paid a total of $26,378.95 individual income taxes during 1970. Subsequently, plaintiff filed a claim for refund of individual income taxes based upon (1) the net operating loss that Seventeen Ventures should have reported as a Subchapter S corporation, and (2) the interest plaintiff paid Guardian Mortgage Investors in 1970 on the loan to Seventeen Ventures. The government denied plaintiff's claim in its entirety.

II. *STATUS OF SEVENTEEN VENTURES AS A SUBCHAPTER S CORPORATION.*

Defendant argues that plaintiff should not be allowed to deduct the net operating loss of Seventeen Ventures because its status as a Subchapter S corporation terminated when Seventeen Ventures received more than 20% of its income from passive investment income through rental payments. Plaintiff counters in his motion for summary judgment that Seventeen Ventures' status as a Subchapter S corporation did not terminate for two reasons. First, because Seventeen Ventures provided significant services, under Treasury Regulation § 1.1372–4(b)(5)(vi), 26 C.F.R. § 1.1372.-4(b)(5)(vi), rental income received by Seventeen Ventures was not passive investment income. Second, because Seventeen Ventures was a corporation actively engaged in business operations, its rental income in 1970 was not passive investment income. In opposition to plaintiff's motion, defendant argues: (1) that plaintiff should be barred from raising the claim of "significant services" because it was not presented in the Claim for Refund; (2) that rental income received by Seventeen Ventures was not excludable from "passive investment income" because Seventeen Ventures did not render significant services to its tenants; and (3) that the fact Seventeen Ventures is actively engaged in the rental business does not take its rental income outside the definition of "passive investment income."

Before filing a suit for refund, a taxpayer must file a claim for relief. 26 U.S.C. § 7422. In the suit for refund, taxpayer can only recover on grounds stated in the refund claim. *Real Estate-Land Title & Trust Co. v. United States*, 309 U.S. 13, 17–18, 60 S.Ct. 371, 373, 84 L.Ed. 542 (1940); *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *Herrington v. United States*, 416 F.2d 1029, 1032 (10th Cir. 1969). The controlling Treasury Regulation states that "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treasury Regulation § 301.6402–2(b), 26 C.F.R. § 301.6402–2(b).

Defendant states plaintiff's refund claim did not allege that Seventeen Ventures provided "significant services" which would exclude its rent from "passive investment income" within the meaning of 26 U.S.C. § 1372(e)(5). In his claim for refund plaintiff stated as follows:

During 1970 Seventeen Ventures, Inc. received $66,269 of gross rents and $3,356 of other income all of which was entirely related to the apartment operation of such corporation. The Internal Revenue Service erroneously refused to allow the taxpayer to deduct the loss sustained in 1970 by Seventeen Ventures, Inc. solely because of the contention that such income represented "passive investment income" as defined in section 1372(e)(5), I.R.C., and resulted in the termination of

the election of Seventeen Ventures, Inc. to be taxed as a United States Small Business Corporation. Such determination is erroneous since the rental of real estate has long been recognized as the conduct of a business and not "passive investment income." See *Anders I. Lagreide*, 23 T.C. 508, and decisions cited therein.

To allow the Commissioner to fully consider and properly decide and narrow a taxpayer's claims, the taxpayer cannot use one ground in his refund claim and an entirely different ground in a later suit. *Danly Machine Corp. v. United States*, 356 F.Supp. 1284, 1287 (E.D.Ill.1972), *aff'd* 492 F.2d 30 (7th Cir. 1974). Section 7422 of the Internal Revenue Code implies that "the grounds relied on in a suit for refund must be reasonably encompassed by those set out in the claim for refund." *Herrington v. United States*, 416 F.2d at 1032 (footnote omitted). Although plaintiff in his refund claim did not specifically argue that Seventeen Ventures provided "significant services" that would exclude its rental income from consideration as "passive investment income" and prevent its status as a Subchapter S corporation from terminating, we believe these grounds were "reasonably encompassed" in the claim for refund. Since both parties have fully addressed the issue, we do not believe it would be improper to consider the claim at this time. *Adams v. United States*, 401 F.Supp. 1142, 1151 (D.Kan.1975). Thus, we reject defendant's argument that we do not have jurisdiction to consider this claim in plaintiff's motion for summary judgment.

■ Plaintiff argues that Seventeen Ventures rendered significant services to its tenants that would qualify to exclude its rental income pursuant to Treasury Regulation § 1.1372–4(b)(5), 26 C.F.R. § 1.1372–4(b)(5), from "passive investment income" as defined in 26 U.S.C. § 1372(e)(5)(C). Pursuant to 26 U.S.C. § 1372(e)(5), a Subchapter S election terminates if the corporation receives "passive investment income" in excess of 20% of its gross receipts for the year in question. Passive investment income is defined in § 1372(e)(5)(C) as follows:

> For the purposes of this paragraph, the term "passive investment income" means gross receipts derived from royalties, rents, dividends, interest, annuities and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this paragraph only to the extent of gains therefrom).

Although more than 20% of Seventeen Ventures' gross receipts for 1970 were derived from rent, plaintiff argues that because Seventeen Ventures rendered significant services to its tenants, its rental income is not passive investment income under Treasury Regulation § 1.1372–4(b)(5)(vi), 26 C.F.R. § 1.1372–4(b)(5)(vi). This Regulation provides:

> The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant.

To determine whether Seventeen Ventures provided significant services, it is necessary to examine the services Seventeen Ventures provided tenants of Boulevard East Apartments.

In paragraph 15 of the affidavit attached to his motion for summary judgment, plaintiff states that he "decided to use Jodaco as Seventeen Ventures' agent for purposes of the day-to-day operation of the apartment

complex," and further asserts that "[s]ignificant services are provided to tenants of Boulevard East *by Jodaco.*" (Emphasis added.) As an illustration of these services plaintiff cites the following: a swimming pool and patio with patio furniture, restrooms, and large beach umbrellas; a recreation room equipped with kitchen appliances and furniture that is available for parties and meetings; a laundry room; individual storage compartments separate from the apartments; apartments with full electric kitchen, dishwasher, carpeting and draperies; redecoration of each apartment every three years; message service; individual parking spaces; optional cable television service; full-time maintenance man "for any kind of day to day repair or odd jobs"; and normal services such as utility hookups. In the affidavit plaintiff also explains that the qualification fee at a nearby golf club was maintained to provide future tenants with the option to join that club.

As Treasury Regulation § 1.1372–4(b)(5)(vi), 26 C.F.R. § 1.1372–4(b)(5)(vi), suggests, to exclude rental income received for use or occupancy of rooms or other space, services provided must be significant and not those usually or customarily rendered an occupant. We note that "it is not the amount of services rendered, but the nature or type of services rendered that determines whether the services are 'substantial.'" *H. & L. Reid, Inc. v. United States,* 375 F.Supp. 1099, 1101 (E.D.Mich. 1973). Many of the services provided by plaintiff are not unusual in the operation of an apartment complex, including a full-time maintenance man to handle day-to-day repairs. *City Markets, Inc. v. Commissioner,* 433 F.2d 1240, 1242 (6th Cir. 1970); *H. & L. Reid,* 375 F.Supp. at 1101. Although the message service to refer telephone calls and mail to the proper location is not a service usually and customarily provided with the rental of apartments, we do not consider this to be a significant service as contemplated by the regulation. *City Markets,* 433 F.2d at 1242; *Bramlette Building Corp., Inc. v. Commissioner,* 424 F.2d 751, 753 (5th Cir. 1970). Furthermore, all operations that would arguably provide significant rental

services were provided by Jodaco, not Seventeen Ventures. *Winn v. Commissioner,* 595 F.2d 1060, 1064 (5th Cir. 1979). For all the reasons discussed above we find that Seventeen Ventures did not render significant services to its tenants that would cause its rental income to be excluded from the definition of passive investment income as provided in Treasury Regulation § 1.1372–4(b)(5)(vi), 26 C.F.R. § 1.1372–4(b)(5)(vi). Therefore, plaintiff's motion for summary judgment on this ground will be overruled.

Plaintiff further contends that rental income received by Seventeen Ventures was not "passive investment income" because the corporation was actively engaged in business operations. This argument relies upon the Fifth Circuit's holding in *House v. Commissioner,* 453 F.2d 982, 987 (5th Cir. 1972). That case involved § 1372(e)(5) prior to the 1966 amendment that changed its title from "Personal holding company income" to "Passive investment income." The Fifth Circuit held that income of a corporation which was statutorily exempted from the status of a personal holding company could not be considered "personal holding company income" as defined in § 1372(e)(5). Because the corporation in *House* was excluded from the statutory definition of a "personal holding company" by 26 U.S.C. § 542(c)(6)(A), the Fifth Circuit held that income the corporation received from interest was not considered personal holding company income under § 1372(e)(5). The corporation's status as a Subchapter S corporation did not terminate even though it received more than 20% of its income from interest.

The plaintiff in *House* was exempted from the status of a personal holding company because it was a lending or finance company that derived "60 percent or more of its ordinary gross income ... directly from the active and regular conduct of a lending or finance business." 26 U.S.C. § 542(c)(6)(A). In relying upon *House* plaintiff argues that "the underlying business activity controls whether income is subject to § 1372(e)(5)." Plaintiff further argues that rental income received by Sev-

enteen Ventures was not passive investment income because that income "resulted from an active business operation, providing luxury accommodations and services to the residents of Boulevard East."

Plaintiff's arguments are not convincing. First, the corporation in *House* was exempt from the status of a personal holding company because it met the requirements of a specific statutory exemption, 26 U.S.C. § 546(c)(6)(A). Meeting this exemption was the basis for excluding the corporation's interest income from the definition of "personal holding company income." The fact that the corporation was actively and regularly engaged in business did not exclude its rental income from "personal holding company income." Plaintiff has not shown that Seventeen Ventures qualifies for any statutory exemption as did the corporation in *House*.

We further reject plaintiff's argument under the Tenth Circuit's interpretation of § 1372(e)(5) in *Marshall v. Commissioner*, 510 F.2d 259 (10th Cir. 1975). Relying upon *House*, the plaintiff in *Marshall* argued that income attributable to "interest" that was received by a business "actively engaged" in making loans was not passive investment income under § 1372(e)(5). The Tenth Circuit rejected this argument noting that "the clear language of Section 1372(e)(5) . . . enumerates 'interest' as a *per se* form of 'passive investment income.' " 510 F.2d at 264. Similarly, rental income received from Seventeen Ventures would come within the term "rent" that is specifically enumerated as a *per se* form of "passive investment income" in § 1372(e)(5).

Plaintiff argues that a conclusion based upon the clear language of Section 1372(e)(5) is incorrect because the 1966 amendment changing the title of the provision from "Personal holding company income" to "Passive investment income" was not meant to change the meaning of the statute. Responding to a similar argument, in *Marshall* the Tenth Circuit stated that "the 1966 revision of the title can only be seen as Congress' calculated effort to erase utterly any implication that a small corpo-

ration must be a personal holding company before it can be excluded from Subchapter S treatment by Section 1372(e)(5)." 510 F.2d at 263. Thus, Seventeen Ventures' rental income will not be excluded from the definition of "passive investment income" in § 1372(e)(5)(C) even though it was actively and regularly engaged in business operations. Because Seventeen Ventures received more than 20% of its income from passive investment income, its status as a Subchapter S corporation terminated in 1970 and plaintiff should not be allowed to deduct Seventeen Ventures' net operating loss on his personal income taxes.

Because the income plaintiff received from rents was "passive investment income" within the meaning of 26 U.S.C. § 1372(e)(5)(C), plaintiff's motion for summary judgment premised on plaintiff's deduction of Seventeen Ventures' net operating loss will be denied. Defendant's motion for summary judgment on this ground will be granted.

### III. *INTEREST PAYMENTS ON LOAN TO SEVENTEEN VENTURES.*

As a second ground for summary judgment, defendant asserts that plaintiff is not entitled to deduct interest payments made by plaintiff in 1970 on a loan to Seventeen Ventures because plaintiff was guarantor of the loan. In his motion for summary judgment plaintiff counters that the interest deduction is available because he was directly and primarily liable for the loan payments in 1970, and because Treasury Regulation § 1.163–1(b), 26 C.F.R. § 1.163–1(b) allows this deduction.

Plaintiff argues that the parties to the transactions arranging for the construction of Boulevard East "expected and intended for John Crouch to meet the various obligations that were undertaken." The corporate borrower was used "solely for the convenience of and to accommodate the lender" because it could be charged a higher rate of interest than an individual borrower. In his reply memorandum plaintiff asserts that he "*does not* seek to ignore the existence of Seventeen Ventures" (emphasis

in original), and that the corporation "was not used in a sham transaction—it was and is an active business corporation." (Footnote omitted.) Thus, plaintiff argues that because he was directly liable on the loan by Guardian Mortgage Investors to Seventeen Ventures he is entitled to ·deduct the interest payments made on that loan in 1970.

Defendant argues that as guarantor of the loan by Guardian Mortgage Investors to Seventeen Ventures pursuant to a Guaranty of Payment, plaintiff cannot deduct the interest payments he made on this loan. *Putnam v. Commissioner*, 352 U.S. 82, 85, 77 S.Ct. 175, 176, 1 L.Ed.2d 144 (1956). Plaintiff responds by urging the court to not ignore "the substance of the transaction and the actual facts of the case." He asserts that "[t]he description of plaintiff in the document as 'guarantor' was simply the form of the transaction allowing the lenders to charge higher interest than they could on a loan to an individual." Plaintiff urges that the income tax consequences, however, must be governed by the substance rather than the form of the transaction.

For interest to be deductible under section 163(a) of the Internal Revenue Code, 26 U.S.C. § 163, the interest must be the taxpayer's own indebtedness, not the indebtedness of another. *E. g., Golder v. Commissioner*, 604 F.2d 34, 35 (9th Cir. 1979). Examining the substance of this transaction we find that the loan by Guardian Mortgage Investors was made directly to Seventeen Ventures, not to the plaintiff, and that the parties intended Seventeen Ventures to pay interest on the loan. Plaintiff has not shown that he is directly liable on the loan by Guardian Mortgage Investors to Seventeen Ventures other than as a guarantor or surety. Even if plaintiff is directly and primarily obligated to Guardian Mortgage Investors, we find that the relationship between Seventeen Ventures and plaintiff is a guaranty or suretyship. *Nelson v. Commissioner*, 281 F.2d 1, 6 (5th Cir. 1960). As stated by the Fifth Circuit, "Where a corporation is formed and operated for business purposes, it has an identity

for tax purposes separate from that of its sole stockholder." 285 F.2d at 6. Because plaintiff chose to create Seventeen Ventures and use it in the operation of a business, he cannot now escape the tax consequences resulting from its separate existence. 281 F.2d at 7. We find that the 1970 interest payments made by plaintiff were not on plaintiff's own indebtedness, but were instead made on the indebtedness of Seventeen Ventures. *Golder v. Commissioner*, 604 F.2d 34, 35 (9th Cir. 1979). Therefore, plaintiff is not entitled to a deduction on his individual income tax for interest payments made in 1970 to Guardian Mortgage Investors on behalf of Seventeen Ventures. .

In addition, plaintiff argues that because he is sole shareholder, he is "equitable owner" of Seventeen Ventures' assets and is entitled to deduct the interest payments made in 1970 to Guardian Mortgage Investors under Treasury Regulation § 1.163–1(b), 26 C.F.R. § 1.163–1(b), which provides:

> Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness.

To support his argument plaintiff refers to several cases that consider shareholders to be equitable owners of corporate assets.

Examining this regulation in *Golder*, 604 F.2d at 36, the Ninth Circuit reached the following conclusions:

> Reg. section 1.163–1(b) does nothing more than permit the deduction of interest in situations where the taxpayer-borrower is not personally liable on a mortgage of property which is used as security for a *loan made to the taxpayer*. For example, a taxpayer purchases land paying part of the purchase price in cash and the balance with a non-recourse note secured by a mortgage on the land; there, in the event of default, the creditor may look only to the property. Although the taxpayer is not directly liable on the debt— since the creditor may look only to the

734

pledged property for repayment—Reg. section 1.163–1(b) permits the taxpayer to deduct interest payments since the default affects only the taxpayer and no one else. The taxpayer must pay the interest to avoid foreclosure of his ownership interest in the property. Thus Reg. section 1.163–1(b) does not create an "exception" to the statutory rule of section 163(a) that interest is deductible only with respect to the indebtedness of the taxpayer, but simply recognizes the economic substance of non-recourse borrowing. Reg. section 1.163–1(b) permits the taxpayer-borrower in such cases to deduct the interest on the loan even though the taxpayer is not personally liable on the loan. (Emphasis in original.)

Because plaintiff's facts do not fit those contemplated by Treasury Regulations § 1.163–1(b), plaintiff is not entitled to deduct the interest payments made in 1970 on behalf of Seventeen Ventures from his individual income taxes. Therefore, plaintiff's motion for summary judgment is overruled. Defendant's motion for summary judgment on plaintiff's claim that he is entitled to deduct interest payments made to Guardian Mortgage Investors in 1970 will be granted.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be overruled.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be granted.

IT IS FURTHER ORDERED that defense counsel prepare, circulate and submit a Journal Entry of Judgment.