AARON M. STOVER AND DIXIE STOVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stover v. Commissioner
Docket No. 4772-83.
United States Tax Court
T.C. Memo 1984-551; 1984 Tax Ct. Memo LEXIS 125; 48 T.C.M. (CCH) 1400; T.C.M. (RIA) 84551; October 15, 1984. Richard W. Davis, for the petitioners. Mark A. Pridgeon, for the respondent. GERBER MEMORANDUM OPINION GERBER, Judge:* Respondent determined deficiencies in petitioners' 1979 and 1980 Federal income taxes in the amounts of $2,954 and $1,619, respectively. Additionally, the respondent determined an addition to tax under section 6653(a)[1] (negligence) for taxable year 1979 of $147.70. After agreement by the parties as to the addition to tax, the sole issue for our consideration is whether the election to treat a corporation as a small *127 business corporation terminated because more than 20 percent of its gross receipts were from "rent" during the taxable years ended September 30, 1979 and 1980. If we find that the election terminated, petitioners will not be entitled to claim losses and investment tax credits of the corporation for their individual 1979 and 1980 Federal income tax computations. All of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, Aaron M. Stover and his wife, Dixie Stover, resided in Crookston, Minnesota, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for the taxable years 1979 and 1980. During the taxable years 1979 and 1980, petitioners were shareholders in Forest Knolls Estates, Inc., (Forest Knolls Estates) a Minnesota corporation, which *128 elected on May 1, 1978, to be taxed as a small business corporation under subchapter S of the Internal Revenue Code (sec. 1371 et seq.) The business of Forest Knolls Estates was the operation of a 90-lot mobile home community in Crookston, Minnesota. Federal income tax returns for the corporation (Forms 1120S) were filed for its fiscal years ended September 30, 1979, and September 30, 1980. During such fiscal years, the corporation derived more than 20 percent of its income from payments by owners of mobile homes in its mobile home community. Forest Knolls Estates owned and maintained a water, sewer, and storm sewer system, paved and lighted streets and fire hydrants, and an underground electric, telephone, and cable television system although it was the tenants' responsibility to arrange and pay for installation and use. Forest knolls Estates also provided off-street parking, Patio blocks, snow removal, garbage collection, individual locked mailboxes, lawn mowers and other lawn maintenance at the tenants' expense, an extermination service for common areas but not inside the mobile homes, a recreational area with a sandbox and swing, periodic *129 newsletters to the tenants, and concrete parking pads although tenants were responsible for removing snow from their respective pads. Forest Knolls Estates employed a full-time resident manager. His duties included maintaining the facilities, equipment, and landscaping in the common areas in compliance with applicable State health and safety regulations, supervising the proper installation of water service lines and sewer riser pipes, monitoring the conduct of occupants, their domestic animals, and traffic conditions within the mobile home community, and keeping regular office hours and taking phone and personal messages for occupants in their absence. The stipulation of facts also reflects services provided by other mobile home communities in the vicinity during 1978 through 1980. For example, one mobile home community in the area with an 84-lot capacity provided paved streets and snow removal, employed a resident manager, provided off-street parking and a recreational area for children with a sandbox and swing set, and provided lawn mowers and cable television installation at the tenants' expense. This mobile home community did not have paved or concrete driveway *130 pads nor did it circulate newsletters to the tenants. A fire hydrant was located at the mobile park entrance. Another mobile home community with a 110-lot capacity had city-owned and managed sewer, storm sewer, and water systems with repairs paid by the mobile home community, and provided paved streets, snow and garbage removal. Individual mailboxes were located at the entrance of the community. This mobile home community employed a resident manager with the same responsibilities as the resident manager at Forest Knolls Estates and provided telephone and electrical wiring aboveground. A third mobile home community with a 75-lot capacity paid the city for garbage removal, provided city owned water and sewer systems, maintained the lawns at the tenants' expense, provided a coin-operated laundromat, and provided phone, electrical and cable television wiring aboveground. This mobile home community provided gravel streets and driveways but did not provide a recreational area, separate off-street parking, regular news-letters or locked mailboxes. Although the tenants provided the necessary maintenance and supervised the placement of new mobile homes, this mobile home community *131 did not employ a resident manager. On their joint returns for 1979 and 1980, petitioners deducted the losses from Forest Knolls Estates in the amounts of $9,139 in 1979 and $9,075 in 1980. In addition, with respect to their 1979 joint return, petitioners claimed an investment tax credit of $29 allowable to Forest Knolls Estates for its taxable year ended September 30, 1979. In his notice of deficiency, respondent disallowed the entire amount of the loss deductions and investment tax credit claimed by petitioners because he determined that Forest Knolls Estates' election toi be taxed as a small business corporation had terminated by reason of Forest Knolls Estates having received more than 20 percent of its gross receipts from passive investment income in 1979 and 1980. The issue in this case is whether the losses sustained by, and investment tax credit allowable to, Forest Knolls Estates during its 1979 and 1980 fiscal years are deductible from the income of its shareholders, the petitioners, as losses and credits allowable to shareholders of an electing small business corporation. Sections 1371 through 1379, which comprise subchapter S, allow shareholders of certain electing *132 small business corporations to receive a pass through of the corporations' deductions and credits. Specifically, the question in this case is whether Forest Knolls Estates' election terminated under section 1372(e)(5) because Forest Knolls Estates received more than 20 percent of its gross receipts from "rents" in 1979 and 1980. Section 1372(e)(5)(A) provides the general rule that a subchapter S election shall terminate for any year in which a corporation's passive investment income exceeds 20 percent of its gross receipts. Section 1372(e)(5)(C) defines "passive investment income" as "gross receipts derived from * * * rents * * *." The term "rents" is defined in section 1.1372-4(b)(5)(vi), Income Tax Regs., as follows: (vi) Rents. The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use, property (whether real or personal) of the corporation. The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such *133 as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc. are not considered as services rendered to the occupant. * * * Although more than 20 percent of Forest Knolls Estates' gross receipts for 1979 and 1980 were derived from "rent", petitioners first argue that the mobile home industry differs from other landlord situations where the tenant pays for the use or occupancy of the property. Accordingly, they assert that the income received from the mobile home owners is not passive investment income. Petitioners further contend that the payments by the tenants at Forest Knolls Estates are not rents within the meaning of *134 section 1372(e)(5) because Forest Knolls Estates rendered "significant services" which were primarily for the convenience of the tenants or were other than those "usually or customarily" rendered in connection with the rental space in other mobile home communities. Respondent counters with the argument that the mobile home industry is not unique and that Forest Knolls Estates' election was properly terminated because more than 20 percent of its gross receipts constituted rents, i.e., payments for the use or occupancy of property. Respondent further argues that Forest Knolls Estates' services were those "usually or customarily rendered" to mobile home community tenants. And, in any event, respondent argues that the services were not "significant." Petitioners have not cited any authority for their position other than private letter rulings and revenue rulings that may be distinguished factually and legally. [2] Petitioners merely contend that the owner of a mobile home is different than a person who rents an apartment, office building, house, vacation bungalow, retail commercial space, or hotel room. While the latter is seeking and pays for walls, ceilings, plumbing, *135 heating, and electrical systems, petitioners argue that the owner of a mobile home already owns these items and is only seeking and paying for a place on which to place his home in order to connect to his home's plumbing, heating, and electrical systems. Because the tenants are only paying for a place to connect to certain essential services such as water, sewer, and electrical systems, the tenants are not paying "rent" because they already have four walls around them. Therefore, gross receipts that an owner of a mobile home community receives could never be from passive investment income.We do not accept petitioners' argument. *136 We find nothing unique in the needs of occupants of mobile home communities from those of other places. One may as readily lease land, irrespective of whether there are improvements on the land. Accordingly, we do not find as a matter of law that the services provided by owners of mobile home communities are so different that the relevant case law is inapposite. It is well established that the services a subchapter S corporation provides that are usual and customary in the industry will not be considered "significant" and thus will be considered "rent" within the regulatory definition of passive investment income. Crouch v. United States,509 F. Supp. 727 (D. Kan. 1981), affd. 692 F.2d 97 (10th Cir. 1982) (rent that luxury apartments receive for providing pool, recreation area, etc. is passive investment income); H. & L. Reid, Inc. v. United States, 375 L. Supp. 1099 (E.D. Mich. 1973) (renting of office space and providing mail delivery to tenants, common area for lunch, extensive remodeling to handle tenants' unique needs is passive investment *137 income); City Markets, Inc. v. Commissioner,433 F.2d 1240 (6th Cir. 1970), affg. a Memorandum Opinion of this Court (rent that a retail commercial space landlard receives for general maintenance, monthly pest control, and occasionally taking tenants' phone messages is passive investment income); Bramlette Building Corp. v. Commissioner,52 T.C. 200 (1969), affd. 424 F.2d 751 (5th Cir. 1970) (renting office space and providing general maintenance is passive investment income); Feingold v. Commissioner,49 T.C. 461 (1968) (renting bungalows to vacationers and providing recreational areas and conducting parties is passive investment income). With respect to whether a corporation has furnished "significant services," the relevant inquiry is not the amount of services rendered by the corporation but the nature or type of services rendered. See Bramlette Building Corp. v. Commissioner,supra at 204-206; H. & L. Reid, Inc. v. United States,supra at 1101. Thus, even where a landlord corporation *138 provides exemplary services which exceed the industry norm in both quality and amount, if those services are of the type customarily or usually rendered by landlords, then they are not "significant" within the regulations' meaning. H. & L. Reid, Inc. v. United States,supra at 1100. Many of the services provided by Forest Knolls Estates are not unusual in the operation of a mobile home community nor are they different in the type of services customarily rendered by the other mobile home communities of similar size in the same geographical location. For example, all mobile home communities presented in this case provided the basic necessities for occupancy to its tenants, i.e., hook-up facilities for plumbing, heating, lighting, sewer, television, and some form of garbage disposal and parking capabilities. Forest Knolls hired a full-time resident manager for general maintenance of the facilities and placement of the mobile homes to ensure compliance with applicable State statutes and regulations. However, two of the other mobile home communities also hired resident managers with similar responsibilities. In addition, Forest Knolls Estates may have provided underground *139 wiring for telephone, electricity, and cable television but the other communities all provided the same general services, albeit above the ground. Moreover, we believe it is irrelevant that Forest Knolls provided paved streets rather than gravel streets as the other mobile home communities or that Forest Knolls Estates paid a private garbage collection service rather than hiring the city or using the city's garbage disposal system. We find nothing in the entire record that would distinguish the services that Forest Knolls Estates provided from the services that the other mobile home communities of similar size in the area provided their tenants. It summary, petitioners have not shown that the services were other than those usually or customarily rendered in connection with the rental of mobile home lots or that the services provided by mobile home communities are different from those services provided by landlord corporations in other cases where courts have held that similar services do not constitute significant services. We therefore hold that the rental income received by Forest Knolls Estates for fiscal years 1979 and 1980 was "rent" within the meaning of section 1.1372-4(b)(5)(vi), Income Tax Regs. *140 Because more than 20 percent of Forest Knolls Estates' gross receipts for fiscal years 1979 and 1980 was passive investment income, Forest Knolls Estates' election to be taxed as a small business corporation was properly terminated. Consequently, petitioners (Forest Knolls Estates' shareholders) may not utilize Forest Knolls Estates' losses or investment tax credit on their joint income tax returns for 1979 and 1980. Because of the parties' agreement as to the addition to tax issue under section 6653(a) for 1979, we need not determine whether the underpayment of tax was due to negligence or intentional disregard of the revenue laws. The parties agreed that if we find for respondent on the passive investment income issue, then the addition to tax shall apply. If we find for the petitioner, then the addition to tax shall not apply. In light of our finding for respondent, the addition to tax under section 6653(a) for 1979 shall apply. Decision will be entered for the respondent.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Richard C. Wilbur to Judge Joel Gerber↩ for disposition. 1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue.↩
2. Revenue rulings and private letter rulings have no precedential value. Sec. 6110(j)(3). Even if these publicly disclosed written determinations could be cited as precedent, we do not believe that Forest Knolls Estates provided the type of services as the mobile home communities in P.L.R. 7718007 and P.L.R. 7832092. In addition, petitioners cite Rev. Rul. 72-331, 1972-2 C.B. 513, dealing with a comparable situation but only for purposes of self-employment tax under sec. 1402. However, the revenue ruling relied upon by petitioner has been made obsolete in Rev. Rul. 83-139, 1983-2 C.B. 150, that was issued after, and in conformance with, Bobo v. Commission,70 T.C. 706↩ (1978).