HUBERT E. LILLIS AND MARY F. LILLIS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Lillis v. Commissioner
Docket Nos. 6525-79, 8785-79, 12155-81, 12907-81.
United States Tax Court
T.C. Memo 1983-142; 1983 Tax Ct. Memo LEXIS 646; 45 T.C.M. (CCH) 1000; T.C.M. (RIA) 83142; March 17, 1983. Hubert E. Lillis, pro se, in docket Nos. 6525-79 and 12907-81. Hubert E. Lillis (an officer), for the petitioner in docket Nos. 8785-79 and 12155-81. *651 Thomas N. Thompson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioner
Docket No.
Year
Deficiency
Hubert E. Lillis
and Mary F. Lillis
6525-79
1974
$8,245.83
1975
8,094.68
Rimview Development,
Inc.
8785-79
1974
9,004.38
1975
4,461.91
Rimview Development,
Inc.
12155-81
1976
3,795.89
1977
3,160.71
Hubert E. Lillis
and Mary F. Lillis
12907-81
1976
6,549.84
1977
11,071.74
After concessions, the issues for decision are as follows: (1) Whether the notices of deficiency sent by respondent were issued by an official having the requisite authority. (2)(a) Whether assessment of the deficiencies determined by respondent is barred by the statute of limitations. (2)(b) In the alternative, whether assessment of the deficiencies is barred by the doctrine of equitable estoppel. (3)(a) Whether the corporate petitioner's Subchapter S election was terminated under section 1372(e)(5)[2] by the receipt of passive investment income in excess of 20 *652 percent of its gross receipts. (3)(b) In the alternative, whether the separate existence of the corporate petitioner should be ignored on the ground that said petitioner was merely the alter ego of the individual petitioners. (4) Whether under section 1202 the corporate petitioner is entitled to deduct 50 percent of its long-term capital gains. (5) Whether the corporate petitioner is entitled to deduct officers' compensation in excess of the amounts allowed by respondent. (6) Whether the corporate petitioner is entitled to deduct depreciation on certain vehicles. (7) Whether the individual petitioners received dividends from the corporate petitioner in the amounts determined by respondent. (8) Whether the individual petitioners are entitled to deduct automobile expenses and, if so, in what amount. (9) Whether the individual petitioners are entitled to deduct depreciation on certain vehicles. (10) Whether the individual petitioners are entitled to deduct "engineering expenses" and "relocation and investment study expenses." *653 Before proceeding further, we feel compelled to express the frustration which we experienced in being called upon by petitioners to decide fact-intensive issues on a woefully inadequate record. Primary responsibility for the record must rest with petitioner Hubert E. Lillis. Throughout these proceedings Mr. Lillis repeatedly demonstrated that he was far more interested in portraying himself as the innocent victim of what he perceived to be procedural injustices [3] than in addressing the issues presented by the notices of deficiency. Nevertheless, we have tried to do our best with what we have before us. However, our disposition of certain issues may very well have been different if petitioners had developed all of the facts relevant to those issues rather than neglecting them. We turn now to consideration *654 of the issues. In order to facilitate our disposition of them, we will combine the findings of fact and opinion as to each. Some of the facts have been stipulated and are found accordingly. At the time that they filed their petitions herein, petitioners Hubert E. Lillis and Mary F. Lillis (hereinafter "Hubert Lillis" and "Mary Lillis" or collectively "the Lillises") were husband and wife and resided in Billings, Montana. They filed joint Federal income tax returns for the calendar years 1974 through 1977 with the Internal Revenue Service Center at Ogden, Utah. Petitioner Rimview Development, Inc. (hereinafter "Rimview" or "the corporation") is a Montana corporation. At the time that it filed its petitions herein, Rimview maintained its principal place of business in Billings, Montana.It filed Federal income tax returns for the calendar years 1974 through 1977 with the Ogden Service Center. At all pertinent times Hubert Lillis was the president of Rimview and Owned 99.66 percent of its stock, or 590 shares. Mary Lillis was the secretary and owned.17 percent of its stock, or 1 share. The remaining.17 percent of Rimview's stock was owned by a third-party. Issue 1. *655 Validity of the Statutory Notices[4]
We begin with a threshold issue. Petitioners contend that the notices of deficiency were not issued in accordance with section 6212 and are therefore void. Although they do not tell us exactly what the defect may have been, they suggest that the notices were not issued by an official with the requisite authority. We disagree. The statutory notices sent to the Lillises were issued for the Commissioner by Frederick C. Nielsen, District Director, Helena, Montana. We are unable to determine whether Mr. Nielsen personally executed the notices or whether a subordinate signed them on his behalf. The statutory notices sent to Rimview were also issued for the Commissioner (or the Acting Commissioner) by Mr. Nielsen. One notice does not appear to bear a signature. We are unable to determine whether Mr. Nielsen personally executed the other notice. Section 6212(a) provides that if the Secretary determines that *656 there is an income tax deficiency, he is authorized to send a notice of deficiency to the taxpayer by certified or registered mail. The term "Secretary" is defined in section 7701(a)(11)(B) as the "Secretary of the Treasury or his delegate." The phrase "or his delegate" is defined in section 7701(a)(12)(A)(i) as "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." Under section 301.7701-9(b), Proced. & Admin. Regs., if a function is vested by statute in the Secretary of the Treasury or his delegate and the Treasury regulations provide that such function may be performed by a district director, then the provision in the regulations constitutes a delegation by the Secretary to the district director of the authority to perform such function. Section 301.6212-1(a), proced. & Admin. Regs., provides that if a district director determines that there is an income tax deficiency, he is authorizsed to notify the taxpayer of the deficiency. Thus, the authority to issue notices of deficiency has been delegated *657 by the Secretary to district directors. Under section 301.7701-9(c), Proced. & Admin. Regs., an officer authorized by regulations to perform a function has the authority to redelegate the performance of such function except to the extent that "such power to so redelegate is prohibited or restricted by proper order or directive." Here the only limit on the power of the district director to redelegate is contained in Commissioner's Delegation Order No. 77, Revisions 12 and 14. [5] These revisions allow the district director to redelegate the authority to send notices of deficiency to subordinates not lower than reviewers (GS-9) in the Examination Division and revenue agents (GS-11) in streamlined districts. If the notices of deficiency sent to petitioners were in fact issued by Mr. Nielsen, there could be no question concerning their validity [6] in light of the preceding analysis. On the other hand, if the notices were sent by a subordinate, then the question arises whether Mr. Nielsen had redelegated his authority to send notices and whether the individual who actually *658 issued them was within that delegation. Petitioners bear the burden of establishing that the notices in question were invalid. Perlmutter v. Commissioner,44 T.C. 382, 399 (1965), affd. 373 F.2d 45 (10th Cir. 1967). That petitioners should bear the burden of proof is in part a consequence of the "normal evidentiary rule imposing proof obligations on the moving party." United States v. Rexach,482 F.2d 10, 16 (1st Cir. 1973). More fundamentally, however, it is a consequence of the presumption of official regularity. Perlmutter v. Commissioner,supra.Whenever an official has acted, it is presumed "that whatever is required to *659 give validity to the official's act in fact exists." BorgWarner Corp. v. Commissioner,660 F.2d 324, 330 (7th Cir. 1981). See United States v. Ahrens,530 F.2d 781, 786 (8th Cir. 1976); Lesser v. United States,368 F.2d 306, 309 (2d Cir. 1966).The Supreme Court has recognized the presumption of official regularity on many occasions, and the following passages are among that Court's more frequently cited pronouncements on the subject: The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. [United States v. Chemical Foundation,272 U.S. 1, 14-15 (1926).] [A]ll necessary prerequisites to the validity of official action are presumed to have been complied with, and * * * where the contrary is asserted it must be affirmatively shown. [Lewis v. United States,279 U.S. 63, 73 (1929).] Acts done by a public officer "which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter." [Citations omitted. *660 ] No doubt the presumption of regularity is subject to be rebutted. It stands until dislodged. [Stearns Co. v. United States,291 U.S. 54, 63 (1934).] here petitioners have offered no proof that the official who issued the statutory notices did not have the requisite authority. They have therefore failed to carry their burden of proof. Accordingly, we hold that the notices were valid. Issue 2. Statute of Limitations
Petitioners raise yet another threshold issue. They contend that the statute of limitations bars assessment of any deficiencies which may exist. We disagree. We begin with the Lillises. They filed income tax returns for the years in issue on the following dates: 1974
1975
[7]1976 1977
4/15/75
7/15/76
2/18/77
1/16/78
On January 27, 1978 the Lillises signed a Form 872 ("Consent Fixing Period of Limitation Upon Assessment of Tax") extending to April 15, 1979 the period of limitation for the assessment of tax in respect of their return for 1974. A delegate of the Secretary signed that form on January 31, 1978. The form *661 does not reflect any condition, restriction, or limitation on respondent's right to assess any income tax due for 1974 during the extended period. On December 9, 1979 the Lillises signed a Form 872 extending to April 15, 1981 the period of limitation for the assessment of tax in respect of their return for 1976. A delegate of the Secretary signed that form on December 13, 1979. The form does not reflect any condition, restriction, or limitation on respondent's right to assess any income tax due for 1976 during the extended period. On March 27, 1979 respondent mailed a notice of deficiency to the Lillises for the taxable years 1974 and 1975. On March 19, 1981 he mailed a notice of deficiency to them for 1976 and 1977. We turn now to Rimview. It filed income tax returns for the years in issue on the following dates: 1974
1975
1976
1977
4/21/75
7/7/76
2/18/77
1/16/78
On January 27, 1978 the Lillises, acting in their corporate capacities, signed a Form 872 on behalf of Rimview extending to April 15, 1979 the period of limitation for the assessment of tax in respect of its return for 1974. A delegate of the Secretary signed that form on January 31, 1978. *662 The form does not reflect any condition, restriction, or limitation on respondent's right to assess any income tax due for 1974 during the extended period. On December 9, 1979 Hubert Lillis, acting in his corporate capacity, signed a Form 872 on behalf of Rimview extending to March 15, 1981 the period of limitation for the assessment of tax in respect of its return for 1976. A delegate of the Secretary signed that form on December 13, 1979. The form does not reflect any condition, restriction, or limitation on respondent's right to assess any income tax due for 1976 during the extended period. On March 27, 1979 respondent mailed a notice of deficiency to Rimview for the taxable years 1974 and 1975. On March 3, 1981 he mailed a notice of deficiency to it for 1976 and 1977. As a general rule any tax must be assessed within 3 years after the return was filed. Section 6501(a). The running of the 3-year period is suspended by the issuance of a statutory notice. Section 6503(a)(1). A return filed before the last day prescribed for the filing thereof is deemed to have been filed on such last day. Section 6501(b)(1). The last day for calendar-year taxpayers to file individual *663 income tax returns is, of course, the 15th day of April following the close of the year for which the return is required. Section 6072(a). The last day for calendar-year taxpayers to file corporation income tax returns is the 15th day of March following the close of the year for which the return is required. Section 6072(b). From what we have just said it is readily apparent that assessment of any deficiency against the Lillises or Rimview for 1975 or 1977 is not barred by the statute of limitations, respondent having issued the notices of deficiency within the 3-year period: 1975
1977
return
stat. notice
return
stat. notice
actually filed
mailed
deemed filed
mailed
the Lillises
7/15/76
3/27/79
4/15/78
3/19/81
Rimview
7/7/76
3/27/79
3/15/78
3/3/81
Having resolved 1975 and 1977, we turn now to 1974 and 1976. Section 6501(c)(4) provides an exception to the usual 3-year period within which tax must be assessed. It states that if at any time prior to the expiration of the usual 3-year period the Secretary and the taxpayer agree in writing to extend that period, then tax may be assessed at any time within the extended period. *664 We must therefore conclude that assessment of any deficiency against the Lillises or Rimview for 1974 or 1976 is not barred by the statute of limitations, respondent having issued the notices of deficiency within the extended period: 1974
return
Form 872
expiration
stat. notice
actually filed
[8]executed date
issued
the Lillises
4/15/75
1/31/78
4/15/79
3/27/79
Rimview
4/21/75
1/31/78
4/15/79
3/27/79
1976
return
Form 872
expiration
stat. notice
deemed filed
[9]executed date
issued
the Lillises
4/15/77
12/13/79
4/15/81
3/19/81
Rimview
3/15/77
12/13/79
3/15/81
3/3/81
Petitioners seek to avoid the consequences of their execution of the Forms 872 by contending that respondent is equitably estopped from assessing any deficiency for 1974 or 1976. They allege that their execution of those forms was induced by the "knowingly false misrepresentations" of the respondent. In this regard they maintain that respondent represented that the examination of their return would be "speedily *665 concluded" and that they would be afforded an "early right" to administratively appeal any adverse determination; however, he "failed and refused to make an early completion of the audit examination." [10]
We begin by noting that the doctrine of estoppel is to be applied against the Commissioner "with utmost caution and restraint." Schuster v. Commissioner,312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and revg. 32 T.C. 1017 (1959). See Manocchio v. Commissioner,78 T.C. 989, 1000 (1982), on appeal (9th Cir., Sept. 20, 1982). This is because "the policy in favor of an efficient collection of the public revenue outweighs the policy of the *666 estoppel doctrine in its usual and customary context." Schuster v. Commissioner,supra at 317. However, the doctrine may apply "in those rare instances where the equitable interest of the party asserting estoppel is 'compelling' and the loss which it would sustain is 'unwarrantable' and 'unconscionable'." Estate of Zac Emerson v. Commissioner,67 T.C. 612, 618 (1977), citing Schuster v. Commissioner,supra at 317, 318. See also Underwood v. Commissioner,63 T.C. 468, 477-478 (1975), affd. 535 F.2d 309 (5th Cir. 1976). In our opinion this case is simply not one of those rare instances where the doctrine of estoppel can even be seriously considered. First and foremost, the record provides no factual support for petitioners' allegation that respondent induced them to execute the Forms 872 by knowingly making false representations concerning how quickly the examination would be completed. Second, even if some revenue agent did in fact represent that the examination would be "speedily concluded," we think that phrase is too amorphous for us to definitively say that the examination was not speedily *667 concluded. In any event, "the contention that a consent agreement to extend the statute of limitations for deficiency assessments may be voided by subsequent conduct of the Commissioner is wholly without authoritative support." Biggs v. Commissioner,440 F.2d 1, 3 (6th Cir. 1971), affg. a Memorandum Opinion of this Court. Third, the terms of the Forms 872 do not require respondent to "speedily conclude" his examination. Rather, they give him the unqualified right to assess income tax at any time during the extended period. If petitioners were as concerned as they profess to be about the examination being speedily concluded, we wonder why they agreed to extend the assessment period for as long an interval as they did. Accordingly, we hold that respondent is not estopped from assessing any deficiency against the Lillises or Rimview for any of the years in issue. Issue 3. Termination of Rimview's Subchapter S Election
We turn now to the substantive issues. The major such issue involves the termination of Rimview's Subchapter S election. Rimview was incorporated in 1957. In December 1968 it elected to be taxed as a small business corporation under Subchapter *668 S and hence not be subject to the income taxes imposed by Chapter 1 of Subtitle A, other than as provided by sections 58(d)(2) and 1378.See section 1372(a), (b). For each of the years in issue Rimview filed a Form 1120S ("U.S. Small Business Corporation Income Tax Return"). In the notices of deficiency respondent determined that under section 1372(e) Rimview's Subchapter S election was terminated in 1974 because more than 20 percent of its gross receipts was "passive investment income." Accordingly, he computed the amount of the deficiencies by reference to the regular corporate tax rates set forth in section 11. During the years in issue Rimview derived gross receipts from the following sources: 1974
1975
1976
1977
Interest
contracts
$6,204.50
$5,765.18
$5,172.57
$ 4,532.29
other
74.25
total
$6,278.75
$5,765.18
$5,172.57
$ 4,532.29
Rents
9,313.62
8,454.00
9,690.00
12,761.03
Subtotal
$15,592.37
$14,219.18
$14,862.57
$17,293.32
Land sales
29,249.08
17,252.19
14,749.60
10,751.48
Farming
593.26
446.06
440.30
269.71
Total
$45,434.71
$31,917.43
$30,052.47
$28,314.51
Rimview derived virtually all of its interest income *669 from its activities in attempting to develop a subdivision of residential property near Billings, Montana. From time to time Rimview accepted real estate contracts for deed for the sale of portions of this property. During the years in issue it received interest pursuant to these contracts as set forth in the table above. The rental income derived by Rimview arose in connection with its sale of subdivision property. On one occasion Rimview traded 11 lots to a third party in exchange for five residential rental properties. In August 1971 it acquired additional such rental units. Rimview owned and operated all of these properties at all pertinent times and received gross rents as set forth in the table above. Rimview derived income from its sale of subdivision property [11] which it reported under the installment method. The amounts set forth in the table above represent the payments reported for the years in issue, not reduced by adjusted basis, costs of sale, or any deduction. A Subchapter S election is effective for the taxable year of the corporation *670 for which it is made and for all succeeding taxable years, unless it is terminated. Section 1372(d). Under section 1372(e) an election may be terminated either voluntarily by consent of the shareholders or involuntarily by the occurrence of certain events. One such event involves the receipt by the corporation of passive investment income in excess of a prescribed percentage. In this regard section 1372(e)(5)(A) provides that an election * * * made by a small business corporation shall terminate if, for any taxable year of the corporation for which the election is in effect, such corporation has gross receipts more than 20 percent of which is passive investment income. Such termination shall be effective for the taxable year of the corporation in which it has gross receipts of such amount, and for all succeeding taxable years of the corporation. The term "passive investment income" is defined by section 1372(e)(5)(C) to mean "gross receipts [12] derived from royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities." *671 In the present cases it would appear that Rimview's Subchapter S election was terminated because more than 20 percent of its gross receipts consisted of interest and rents for each of the years at issue: [13]
1974
1975
1976
1977
Gross receipts
$45,434.71
$31,917.43
$30,052.47
$28,314.51
20% thereof
9,086.94
6,383.49
6,010.49
5,662.90
Interest and
rents
15,592.37
14,219.18
See Sieh v. Commissioner,56 T.C. 1386, 1391-1392 (1971), affd. by order (8th Cir., Jan. 17, 1973). However, our inquiry is not ended because not all rents constitute "passive investment income" for purposes of section 1372(e)(5). In this regard section 1.1372-4(b)(5)(vi), Income Tax Regs., distinguishes between passive rents and receipts "for the use or occupancy of rooms or other space where significant services are also rendered to the occupant." [14] Only the former constitutes passive investment income. This distinction exists in order to restrict the availability of Subchapter S to corporations actively engaged in trades or businesses and to deny it to those with large amounts of passive income. See S. Rept. No. 1007, 89th *672 Cong., 2d Sess. (1966), 1966-1 C.B. 527, 532; H. Rept. No. 1238, 89th Cong., 2d Sess., p. 8 (1966). The mechanism adopted by Congress to distinguish corporations having substantial amounts of operating income from corporations having substantial amounts of investment income is the 20-percent limitation of section 1372(e)(5)(A). See Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, par. 6.03, pp. 6-14/15 (4th ed. 1979). Accordingly, we must decide whether the amounts received by Rimview from its tenants constitute "rents," i.e., passive investment income, for purposes of section 1372(e)(5). *673 Section 1.1372-4(b)(5)(vi), Income Tax Regs., defines the term "rents" as follows: The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use, property (whether real or personal) of the corporation. The term "rents" does not include payments for the use or occupancy of rooms or other space where significant services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units, *674 of offices in an office building, etc., are generally "rents" under section 1372(e)(5). Payments for the parking of automobiles ordinarily do not constitute rents. Payments for the warehousing of goods or for the use of personal property do not constitute rents if significant services are rendered in connection with such payments. The general rule under the regulation is clear: Payments for the use or occupancy of entire private residences constitute "rents" for purposes of section 1372(e)(5). The general rule does not apply, however, if significant services are rendered to the occupant. Petitioners contend that Rimview rendered significant services to the occupants of its rental properties; respondent, of course, contends to the contrary. We agree with respondent. In the present cases Rimview advertised the properties for rent, cleaned them when the old tenants moved out, leased them to new tenants, and maintained and repaired them. However, we do not think that activities such as advertising, cleaning, and leasing property are services, much less significant services, "rendered to the occupant" because these activities are not primarily for the occupant's convenience. We *675 also do not think that activities such as maintaining and repairing property are either significant or other than those usually or customarily rendered by a landlord to his tenants. See Crouch v. United States,692 F.2d 97 (10th Cir. 1982) (apartment complex); City Markets, Inc. v. Commissioner,433 F.2d 1240 (6th Cir. 1970), affg. a Memorandum Opinion of this Court (farmers' market); Bramlette Building Corp. v. Commissioner,52 T.C. 200 (1969), affd. 424 F.2d 751 (5th Cir. 1970) (office building); Feingold v. Commissioner,49 T.C. 461 (1968) (vacation bungalows); McIlhinney v. Commissioner,T.C. Memo. 1979-473, affd. by order (3d Cir., Jan. 19, 1981) (shopping mall); H. & L. Reid, Inc. v. United States,375 F.Supp. 1099 (E.D. Mich. 1973) (office building). Apart from the issue of significant services, petitioners contend that Rimview's rental receipts do not constitute rents because they were inextricably related to its activities in attempting to develop the subdivision of residential property near Billings, Montana. In this regard they allege that several lots *676 in the subdivision were exchanged for certain rental properties in order to generate income to pay property taxes on the subdivision. We find this assertion rather curious given the substantial amount of income derived by Rimview from lot sales and the minimal amount of expense which it incurred for property taxes. [15] In any event, the amounts received by Rimview from its tenants were paid in consideration for the use or occupation of property, and no amount of semantic prestidigitation can change that fact. We therefore think it is irrelevant that the rental income arose in connection with the corporation's sales of subdivision property. In view of the foregoing we hold that the amounts received by Rimview from its tenants constitute "rents" for purposes of section 1372(e)(5) and section 1.1372-4(b)(5)(vi), Income Tax Regs. Accordingly, we also hold that Rimview's Subchapter S election was terminated for the years in issue because *677 more than 20 percent of its gross receipts consisted of passive investment income. Petitioners seek to avoid the consequences of the termination of the Subchapter S election by denying Rimview's corporate existence. In this regard they contend that the corporation was merely the alter ego of the Lillises and that its income should therefore be attributed directly to them. We disagree. We begin with the Supreme Court's classic pronouncement on the doctrine of corporate entity: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creditor's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. [Citations omitted.] In Burnet v. Commonwealth Improvement Co.,287 U.S. 415, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. *678 This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages. [Moline Properties v. Commissioner,319 U.S. 436, 438-439 (1943); footnotes omitted.] See also Higgins v. Smith,308 U.S. 473, 477 (1940) ("A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages"); Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134, 149 (1974) ("This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not"). Thus, if adoption of the corporate form has served a business purpose and there is even a modicum of business activity, the corporate form will not be ignored. [16]Crouch v. United States,692 F.2d at 99-100; *679 Strong v. Commissioner,66 T.C. 12, 24 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977). At trial Hubert Lillis testified that one of the reasons for the incorporation of Rimview was to obtain the shield of limited liability. We think incorporation for this purpose constitutes a business purpose within the meaning of Moline Properties. Cf. Crouch v. United States,692 F.2d at 99 ("Incorporation for the sole purpose of avoiding state usury laws has been held to be a business purpose").Furthermore, Rimview leased property during the years in issue; it also sold lots in the subdivision *680 which it was attempting to develop. These activities are certainly more than the modicum of business activity contemplated by Moline Properties. Accordingly, we decline to disregard Rimview's separate existence. [17]
*681 Issue 4. Section 1202 Deduction
[18]
On its income tax returns for 1974 through 1977 Rimview reported long-term capital gains and no capital losses. However, it reduced the amount of such gains by 50 percent, claiming what it styled as a "long-term capital gain credit." In the notices of deficiency respondent disallowed this "credit." If the capital gains in question had been received by an individual, he or she would have been entitled for the years in question to a deduction under section 1202 equal to one-half of those gains. However, corporate taxpayers are not entitled to the section 1202 deduction. Respondent's determination is therefore sustained. Issue 5. Compensation of Corporate Officers
On its income tax returns for 1974 through 1977 Rimview claimed the following deductions for "compensation of officers:" 1974
1975
1976
1977
Hubert Lillis,
President
$17,901.17
$13,137.74
$11,598.64
$10,094.00
Mary Lillis,
Secretary
976.67
976.67
976.67
100.39
Total
$18,877.84
$14,114.41
$12,575.31
$10,194.39
*682 These deductions did not reflect the salary or other compensation actually paid to the officers [19] but were claimed in order to reduce the corporation's taxable income to zero. In the notices of deficiency respondent disallowed these deductions in their entirety because "it has not been established that the amounts represent ordinary and necessary business expense or were expended for the purpose designated." On brief, however, he concedes that Rimview is entitled to a deduction for officers' salary in the amount of $10,000 for each of the years in issue.
Deductions are, of course, a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). An important corollary to this principle is that it is the taxpayer's burden to establish that he or she is entitled to the deductions claimed. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), *683 Tax Court Rules of Practice and Procedure.
Petitioners introduced no evidence on this issue. Respondent's determination is therefore sustained. Issue 6. Depreciation (Rimview)
Rimview claimed deductions for depreciation on certain vehicles on its returns for 1974 through 1977. In the notices of deficiency respondent disallowed these deductions in their entirety, not because he questioned basis or the method of depreciation or useful life, but because "it has not been established that the automobile is a corporate asset, or that the automobile was purchased by you and placed in service in your trade or business." Although the record is admittedly sketchy in this regard, we think the evidence establishes that the vehicles in question were corporate assets and were used by Rimview in its land development and rental property activities, and we so find. On the other hand, the record does not establish whether Rimview or the Lillises actually purchased the vehicles. However, this matter is not of consequence. Under section 167(g) the basis for depreciation is the adjusted basis as defined in section 1011.For purposes of these cases, the general rule of that section provides *684 that the adjusted basis of property, whenever acquired, is the cost of such property or its basis determined under Subchapter C (relating to corporate distributions and adjustments), adjusted as provided in section 1016. If Rimview purchased the vehicles, its basis would be their cost under section 1012. If the Lillises purchased the vehicles and then contributed them to Rimview, its basis would still be their cost under section 362(a)(2). [20] It therefore makes no difference who purchased the vehicles. Accordingly, we hold for Rimview on this issue. Issue 7. Dividend Income
In the notices of deficiency respondent determined that the Lillises withdrew cash from Rimview during the years in issue. He also determined that these withdrawals are taxable to them as dividends to the extent of the corporation's earnings and profits. The amount of dividends for each year corresponds to Rimview's taxable income as determined by respondent in the notices of deficiency *685 issued to the corporation. Petitioners bear the burden of proof but introduced no evidence on this issue. However, we do not think that respondent's determination should be sustained in full. Respondent correctly recognizes that a corporate distribution is taxable as a dividend only to the extent of the corporation's earnings and profits. Sections 301(c)(1) and 316(a). However, he equates earnings and profits with taxable income. The two are not necessarily synonymous. Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.03 (4th ed. 1979). Here he has apparently determined that they are equivalent. We think Rimview's earnings and profits must be reduced given our disposition of the depreciation issue (Issue 6), supra.[21] See also section 312(k)(1), as effective for 1977; section 312(m)(1), as effective for 1974 through 1976; section 1.312-15, Income Tax Regs. Furthermore, respondent has overlooked the dividend exclusion to which Mary Lillis is entitled by virtue of her.17 percent stock interest in Rimview. See section 1.116-1(b), Income Tax Regs. The exclusion should be computed by reference to the amount of dificiency but reduced *686 to reflect our disposition of the depreciation issue. With these qualifications we hold for respondent on this issue. See Sieh v. Commissioner,56 T.C. at 1392. Issue 8. Automobile Expenses
On Schedule C of their income tax returns for 1974 through 1977 the Lillises claimed deductions for automobile expenses [22] related to Hubert Lillis' business activities as a mining engineer and insurance agent. In the notices of deficiency respondent disallowed the deductions in their entirety for lack of substantiation and for failure to establish that they represent ordinary and necessary business expenses. *687 We are satisfied that Hubert Lillis incurred automobile expenses in pursuit of his business activities. Accordingly, we view this issue as one involving only substantiation. At trial the Lillises introduced no records to substantiate the deductions claimed. Even though a taxpayer fails to comply with the recordkeeping requirements of section 6001 and section 1.6001-1, Income Tax Regs., we think we should make a reasonable approximation of automobile expenses incurred in local transportation if we are satisfied that such expenses were in fact incurred and they are otherwise deductible. See Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). However, the Lillises have not made our task an easy one, having failed to reconstruct the expenses or even describe how the vehicles were typically used. Thus, we have no choice but to bear heavily against them because any inexactitude is of their own making. Cohan v. Commissioner,supra.Accordingly, we hold that the Lillises are entitled to deductions for automobile expenses in the amount of $1,200 for each of the taxable years 1974 through 1976 and $1,360 for the taxable year 1977. [23] *688 Issue 9. Depreciation (the Lillises)
On their Schedule C's the Lillises also claimed deductions for depreciation on certain vehicles. In the notices of deficiency respondent disallowed these deductions in their entirety on two grounds, including lack of substantiation. Petitioners introduced no evidence to establish adjusted basis or any other component of the depreciation formula, see section 167, and therefore failed to carry their burden of proof. Moreover, in allowing them deductions for automobile expenses (see Issue 8, supra), we used the standard business mileage rate provided in Rev. Proc. 74-23, 1974-2 C.B. 476, and Rev. Proc. 77-40, 1977-2 C.B. 574. This rate includes an allowance for depreciation. See section 3.01, Rev. Proc. 74-23. Accordingly, we hold for respondent on this issue. Issue 10. Other Schedule C Deductions
On their Schedule *689 C for 1977 the Lillises claimed deductions for "engineering expenses" in the amount of $3,769.79 and "relocation and investment study expenses" in the amount of $4,118.97. In the notice of deficiency respondent disallowed these deductions in their entirety for lack of substantiation and for failure to establish that they represent ordinary and necessary business expenses. At trial Hubert Lillis testified that "engineering expenses in that business [i.e., licensed engineer] are a necessary business expense." He did not elaborate any further nor did he identify what particular expenses might be involved. No substantiation was provided. The deduction for "relocation and investment study expenses" apparently involved a trip to Alaska made by Hubert Lillis for the professed purpose of studying the Alaska pipeline, the oil industry, and the effect of pumping stations on ptarmigans (a species of grouse having feathered legs and feet). Petitioners have not explained, however, how this trip related to Hubert Lillis' business activities.Again, no substantiation was provided. Petitioners have not carried their burden of proof. Accordingly, respondent must be sustained on this issue. *690 To give effect to the concessions and our disposition of the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. Consolidated herewith are the cases of Rimview Development, Inc. docket Nos. 8785-79 and 12155-81, and Hubert E. Lillis and Mary F. Lillis, docket No. 12907-81.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
3. The central thesis of petitioner Hubert E. Lillis, who styles himself "not a tax protestor but a harassment protestor of the worst kind," appears to be that he has been criminally harassed and held hostage to IRS torture for a period in excess of 2,150 days, for which he is entitled to compensation at the rate of $10,000 per day, as well as actual and punitive damages.↩
4. Unless otherwise indicated, all section references in this part of the opinion are to the Internal Revenue Code of 1954, as amended and in effect at the time of the issuance of the statutory notices (March 1979 and March 1981).↩
5. Revision 12 is found at 1979-1 C.B. 475; Revision 14 is found at 1980-1 C.B. 573↩.
6. The fact that a notice of deficiency is not signed does not affect its validity. Perlmutter v. Commissioner,44 T.C. 382, 399-400 (1965), affd. 373 F.2d 45 (10th Cir. 1967). Section 6212(a) provides that the Secretary is authorized to send a notice of deficiency to the taxpayer; it does not require that he sign it. See Commissioner v. Oswego Falls Corp.,71 F.2d 673, 677 (2d Cir. 1934), affg. 26 B.T.A. 60↩ (1932).
7. An amended return for this year was filed sometime prior to April 15, 1977.↩
8. Date executed by the Secretary, the later signatory to each Form 872.↩
9. See footnote 8, supra.↩
10. Although the gravamen of their complaint is respondent's alleged delay, petitioners do not invoke the doctrine of laches. Perhaps they recognize that we have previously held that this Court is not at liberty to modify a fixed period prescribed by a statute of limitations in which the Commissioner is authorized to act. See Saigh v. Commissioner,36 T.C. 395, 424-425 (1961); see also Foster v. Commissioner,80 T.C. 34, 229↩ (1983).
11. Respondent has not challenged Rimview's classification of this income as capital gains. See section 1221(1).↩
12. Respondent appears to equate "gross receipts" with "gross income." However, the two terms are not synonymous. Section 1.1372-4(b)(5)(iv)(a), Income Tax Regs. "Gross receipts" means the total amount received or accrued under the method of accounting used by the corporation in computing its taxable income. Thus, the total amount of receipts is not reduced by returns and allowances, cost, or deductions. Accordingly, in the case of the sale of property, neither the adjusted basis of the property nor the costs of sale serve to reduce "gross receipts" for purposes of section 1372(e)(5)(C). Section 1.1372-4(b)(5)(iv)(b↩), Example (1), Income Tax Regs.
13. Because termination is effective for the taxable year in which the terminating event occurs and for all succeeding taxable years, we actually need to focus on only 1974. Section 1372(e)(5)(A). See also section 1372(f)↩, which precludes Rimview from making a new election for any of the subsequent years in issue. 14. In the case of interest no such distinction is made. All interest is included in passive investment income for purposes of section 1372(e)(5)(A) regardless of how "actively" it may have been earned. Marshall v. Commissioner,60 T.C. 242, 250-253 (1973), affd. 510 F.2d 259, 264↩ (10th Cir. 1975). Petitioners fail to recognize this fact when they argue that Rimview should be treated no differently than a Subchapter S corporation which sells subdivision lots strictly for cash.
15. On its income tax returns for 1974 through 1977 Rimview claimed deductions for taxes (net of taxes in respect of the rental properties) in the following amounts: ↩
1974
1975
1976
1977
$423.44
$124.80
$336.35
$322.91
16. In order to prevent abuse of the two-tiered tax structure, courts have been extremely wary of disregarding the corporate entity where that demand emanates from the shareholders of a closely-held corporation. Strong v. Commissioner,66 T.C. 12, 22, 24 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977). See Harrison Property Management Co. v. United States,201 Ct. Cl. 77, 475 F.2d 623, 626 (1973); Bolger v. Commissioner,59 T.C. 760, 767↩ fn. 4 (1973).
17. Petitioners attached to their brief documents which indicate that Rimview's certificate of incorporation was suspended in 1963 for failure to file corporation license tax returns with the Montana Department of Revenue and that Rimview was involuntarily dissolved in 1982 for failure to file annual corporation reports with the Montana Secretary of State. See Mont. Code Ann. §§ 15-31-523 and 35-6-101 et seq. (1981). Petitioners' documents also indicate that Rimview's corporate character was reinstated and its powers, rights, and privileges were revived in December 1982 pursuant to its Application for Reinstatement of Defaulted Corporation and its Application for Reviver. See Mont. Code Ann. §§ 35-6-201 and 15-31-524 (1981). (Included with these applications was the notarized statement of Hubert Lillis that Rimview "is carrying on the business or conducting the affairs for which it was incorporated.") These documents do not constitute evidence. Cf. Rule 143(b), Tax Court Rules of Practice and Procedure. Even if they did, the result was reached above would not be different. Under section 35-6-202, Mont. Code Ann. (1981), the restoration of corporate rights pursuant to an application for reinstatement "relates back to the date the corporation was involuntarily dissolved, and the corporation shall be considered to have been an existing legal entity from the date of its original incorporation." Furthermore, suspension of corporate powers, rights, and privileges under section 15-31-523, Mont. Code Ann. (1981), is not equivalent to the dissolution of the corporation. Unless the corporation expires because the articles of incorporation provide that its existence shall only be for a limited period of time, see Mont. Code Ann. §§ 35-1-108(1) and 35-1-1302 (1981), the legal existence of the corporation continues until it is either voluntarily or involuntarily dissolved. See, e.g., Mont. Code Ann. §§ 35-1-912(2) (1981). See also 16A Fletcher, Cyclopedia of Corporations, §§ 7966 and 8113 (1979 rev.). Accordingly, for the years in issue we think there was an entity subject to the tax imposed by section 11. See Watts v. Liberty Royalties Corporation,106 F.2d 941, 943-944 (10th Cir. 1939); Annot., 13 A.L.R.2d 1220↩ (1950).
18. As we read the parties' stipulation of facts, petitioners have conceded this issue. However, both petitioners and respondent address it on brief. In order to avoid any question about the concession, we will decide the issue.↩
19. The Lillises did not report any wages or salary on their returns for 1974 through 1977. However, they did report Subchapter S income equal to the amount of the compensation deducted by Rimview for Hubert Lillis for 1974 through 1976 and for the Lillises for 1977.↩
20. There is nothing to suggest that the Lillises may have themselves depreciated the vehicles prior to contributing them to their corporation. Accordingly, no adjustment under section 1016(a)(2) would be required.↩
21. This analysis might also suggest that Rimview's earnings and profits should be reduced by the amount of officers' compensation conceded by respondent.(See Issue 5, supra.↩) The matter is of only minor consequences, however, because the amount conceded is taxable to the Lillises as ordinary income whether it is characterized as compensation or dividends. Thus, only the amount of the dividend exclusion to which Mary Lillis is entitled (see above) would be affected.
22. The record does not indicate whether the Lillises claimed deductions for actual expenses or used the simplified method (standard mileage rate) applicable to automobiles.↩
23. These amounts are computed on the basis of 8,000 business miles and the standard business mileage rate ($ .15/mile for 1974 through 1976 and $ .17/mile for 1977.) See Rev. Proc. 74-23, 1974-2 C.B. 476, and Rev. Proc. 77-40, 1977-2 C.B. 574↩.