**Aaron M. STOVER and Dixie Stover, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 85–1288.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1985.

Decided Jan. 8, 1986.

Richard W. Davis, St. Paul, Minn., for appellants.

John F. Murray, of the Tax Div., U.S. Dept. of Justice in Washington, D.C., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

The Commissioner of Internal Revenue terminated the Subchapter S election of Forest Knolls Estates, Inc. (Corporation), a Minnesota corporation, for taxable years 1979 and 1980. Appellant-shareholders, Aaron and Dixie Stover, seek reversal of the Tax Court decision which sustained Commissioner's action. 53 T.C.M. (P–H) ¶ 84 (1984). The Tax Court ruled that Commissioner had properly terminated Corporation's Subchapter S election pursuant to section 1372(e)(5)(A) of the Internal Revenue Code of 1954,[1] which provides that an election under Subchapter S terminates if an electing corporation's "passive investment income" exceeds 20 percent of its gross receipts. The question presented is whether rental income from Corporation's mobile home community in fiscal years 1979 and 1980 was passive investment income within the meaning of I.R.C. § 1372(e)(5)(C) and Treasury Regulation § 1.1372–4(b)(5)(vi). For the reasons set forth below, we affirm the Tax Court.

## I.

The facts have been stipulated by the parties. Corporation owns and operates a ninety-lot mobile home community located in Crookston, Minnesota. On May 1, 1978, Corporation timely filed an election under Subchapter S, I.R.C. §§ 1371–1379. Corporation incurred net operating losses in 1979 and 1980. Stovers claimed a portion of each year's losses ($9,139 in 1979 and $9,075 in 1980) on their joint tax returns as

---

1. References to sections under Subchapter S are to the sections in effect during the years in issue.

allowed by the "pass through" provision of Subchapter S. In addition, Stovers also received a pass through of a $29 investment tax credit allowable to Corporation on their 1979 joint tax return. Commissioner later determined that Corporation's Subchapter S election terminated for the taxable years in dispute and issued a notice of deficiency to Stovers disallowing the corporate loss deductions and investment tax credit. As a result of the disallowance, Commissioner assessed deficiencies against Stovers in the amounts of $2,954 for 1979 and $1,619 for 1980.

Stovers petitioned the Tax Court for a redetermination of the deficiencies on the ground that Commissioner improperly terminated Corporation's Subchapter S election. Stovers argued in the Tax Court, as they do on appeal, that Corporation's rental income was not passive income because Corporation rendered significant services in connection with the rental of lots in its mobile home community.

## II.

The parties agree that Corporation's rental income exceeded 20 percent of its gross receipts for the years involved.[2] Thus our only concern is whether Corporation's rental income is passive investment income. Section 1372(e)(5)(C) defines passive investment income to include "rents." Treasury Regulation § 1372–4(b)(5)(vi) defines rents as follows:

(vi) Rents. The term "rents" as used in section 1372(e)(5) means amounts received for the use of, or right to use property (whether real or personal) of the corporation. The term "rents" does not include payments for the use or occupancy of rooms or other space where *significant* services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist homes, motor courts, or motels. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, etc., are not considered as services rendered to the occupant. Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple housing units, or offices in an office building etc., are generally "rents" under section 1372(e)(5). Payments for the parking of automobiles ordinarily do not constitute rents. Payments for the warehousing of goods or for the use of personal property do not constitute rents if significant services are rendered in connection with such payments. (Emphasis supplied.)

### A.

Stovers contend that a payment for the right to lease space in a mobile home community is not passive rent because the major focus of the mobile home community industry is the rendition of services, as opposed to the mere rental of land. In Stovers' words:

Those who operate mobile home communities are involved in an enterprise which is heavily service oriented. This is true because ... the owner of a manufactured [mobile] home comes to the mobile home community with a home which has a floor, walls, ceiling, doors, and electrical equipment. What he must have is access to services including water, electricity, gas, sewer and telephone. It is true that he needs land but there is a great deal of vacant land available. There is not, however, a great deal of

---

**2.** During fiscal year 1979 Forest Knolls Estates had gross receipts of $23,645, of which all but $125 were reported on Corporation's tax return as rental income. During fiscal year 1980 gross receipts were $48,629, of which all but $350 were reported on Corporation's tax return as rental income.

land which has electrical, water, sewer and telephone service ready for connection to a manufactured home. Each of these is a vital service which the owner of a manufactured home must have and without which his home is almost useless.

At oral argument, Stovers' counsel acknowledged that the question here is simply whether the providing of utility hook-ups is a significant service. Stovers argue that it is significant because a mobile home owner deems utilities as essential. We do not agree, however, with the premise that "essential" is synonymous with "significant," as the latter term is used in the regulation. In our judgment, the provision of utility connections, though concededly essential to a mobile home owner, is not a significant service as contemplated by the regulation since utilities are customarily provided in connection with the rental of space for occupancy only. This conclusion is reinforced by the examples contained in the regulation, which instruct that services such as "the furnishing of heat and light" are not considered "rendered to the occupant."

### B.

Stovers contend in the alternative that Corporation rendered significant services by providing services primarily for the convenience of its tenants that exceeded those services usually and customarily provided by comparable mobile home communities in Corporation's geographical area. Corporation's services included: water, sewer, and storm sewer system; electrical, telephone, and cable television wiring installed underground; two miles of paved streets; garbage collection; concrete parking pads for each lot; individual locked mailboxes; two acre recreational area with a sandbox and swing set; three acre off-street parking area; patio blocks for sidewalks; street lighting; fire hydrants; exterminator services for common areas; lawn mowers and lawn maintenance available for a rental fee paid to Corporation; topsoil, fertilizer, and grass seed available at no cost to the ten-

ant; and a periodic newsletter. Corporation also employed a full-time resident manager whose duties included maintaining the facilities, equipment, and landscaping in the common areas in compliance with applicable state health and safety regulations; supervising the proper installation of water service lines and sewer riser pipes; monitoring the conduct of occupants, their domestic pets, and traffic conditions within the mobile home park; keeping regular office hours; and taking telephone messages for tenants in their absence.

The Tax Court found that these services are neither unusual in the operation of a mobile home community nor different from the type of service customarily rendered by other mobile home communities of similar size in Corporation's geographical area. Stovers challenge this finding and claim that the Tax Court failed to fully appreciate the quality of services rendered by Corporation.

■ Whether Corporation in fact provided exemplary services is immaterial to our analysis. As the Tax Court correctly observed, it is not the quality or quantity of services rendered that is determinative, but rather the nature or type of services rendered. For a service to qualify as significant under the regulation, it must be akin to the type of service rendered by a hotel, motel, boarding house, tourist home, or similar business. *See Bramlette Building Corp. v. Commissioner*, 424 F.2d 751, 753 (5th Cir.1970); *City Markets, Inc. v. Commissioner*, 433 F.2d 1240, 1242 (6th Cir. 1970); *H. & L. Reid, Inc. v. United States*, 375 F.Supp. 1099, 1102 (E.D.Mich.1973); *Feingold v. Commissioner*, 49 T.C. 461, 467 (1968). We think that this interpretation of the regulation is consonant with the expressed intent of Congress to limit pass through tax treatment to "small businesses actively engaged in trade or business." S.Rep. No. 1007, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 2141, 2148. The services furnished by Corporation during the taxable years in question are the type of services generally provided by a landlord to a ten-

ant or customarily rendered in connection with the rental of space for occupancy only. We therefore conclude that Corporation did not render "significant services" within the meaning of Treas.Reg. 1.1372–4(b)(5)(vi), and thus the rental income from Corporation's mobile home community was passive investment income under I.R.C. § 1372(e)(5)(C).

The decision of the Tax Court is affirmed.