T.C. Summary Opinion 2004-125


UNITED STATES TAX COURT


ROBERT P. SWEET AND DAWNIELLE K. LAWSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 331-03S.                   Filed September 9, 2004.


Robert P. Sweet and Dawnielle K. Lawson, pro sese.

<u>Ronald T. Jordan</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the year at issue.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined for the year 2000 a deficiency in petitioners' Federal income tax of $5,437 and an accuracy-related penalty of $1,087.

The Court considers petitioners to have conceded respondent's determination disallowing itemized deductions of $540 because petitioners provided neither argument nor evidence on the issue at trial. Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Sundstrand Corp. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988).

Petitioners concede that respondent correctly determined that $1,283 of respondent's $17,986 adjustment in the statutory notice of deficiency is a passive activity loss. The issues remaining for decision are whether for 2000 petitioners: (1) Are entitled to deduct a loss of $16,703 on Schedule E, Supplemental Income and Loss; and (2) whether petitioners are liable for the accuracy-related penalty under section 6662.

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits received in evidence are incorporated herein by reference. At the time the petition was filed, petitioners resided in Noblesville, Indiana.

## Background

Robert P. Sweet (petitioner) was employed during the year as a real estate loan officer, and his wife, Dawnielle K. Lawson, was not employed outside of the home.

In July of 1997, petitioner purchased his first condominium unit at The Summit condominium resort (Summit) in Panama City, Florida. In December of 1998, he purchased a second unit at the same location. Petitioner's two units, 518 and 519, adjoin. Petitioner installed doors that allowed inside access from one unit to the other. Each unit contains 912 square feet of living space and sleeps 6 people. The average rental period for both units was more than 7 but less than 30 days.

The Summit owners association handled the maintenance and upkeep of the building exterior and common areas, including swimming pools, hot tubs, exercise equipment and sauna areas, tennis courts, beaches and beach chair rentals, restaurants, parking, and collecting and removing trash.

A separate entity, Advisors Realty (Advisors), operated an on site rental agency that rented units to the public and provided ancillary services for owners under an agreement providing for a 30-percent commission. Advisors provided accounting services, advertising and promotion, cleaning equipment and supplies, an inspection prior to return of the damage deposits, and an annual inspection and inventory. Advisors also received in 2000 a separate cleaning charge of $40.75[1] after each owner's or owner's guest's use of a unit. The

---

[1]Evidence in the record indicates that this charge was later increased to $65.

cleaning charge paid for Advisors' housekeeping or "maid service" following rental departures, which in petitioner's case would have included cleaning and linen exchange. Petitioner provided the maid and linen service at no "extra" charge to customers. Each owner, however, was free to book his own guests or allow Advisors to do it for commission. Petitioner periodically allowed Advisors to book guests for his units and paid the standard commission.

Petitioner sought to minimize the involvement of Advisors, and avoid their commission, by executing his own marketing activity and customer bookings. In 2000, petitioner put together and maintained a Web page that advertised units 518 and 519. He created the Web site by entering contact information and information about the amenities offered by his condominium into a "template" on a preexisting site called A1 Vacations. Petitioners received gross rental income of $29,467 during 2000, of which $11,137 was received through bookings from Advisors.

Petitioners required their guests to call them before contacting the front desk with problems and concerns as a way to avoid high fees charged by the owners association for routine maintenance items like changing light bulbs. Petitioners also led guests that they booked through a detailed telephone check-in procedure. Petitioners maintained a storage area onsite containing certain replacement items.

Petitioner, from time to time, went to visit his units to perform repairs and maintenance accompanied, occasionally, by his wife. It was a 785 mile trip each way. When petitioner traveled to the condominium for repairs and maintenance, he and his wife stayed in one of the units. One of those trips was to attend the owners meeting in September. Petitioner attends owners meetings from time to time to "protect my investment".

Petitioner performed other activities related to the condominium units. He replied to e-mails, answered the phone to talk to people about the units, updated his online availability calendar, tested and improved his Web site, paid bills, and handled various banking and oversight matters.

On petitioners' Federal income tax return for 2000, on Schedule E, petitioners claimed a loss of $17,986 of which $16,703 is attributable to units 518 and 519.

## Discussion

The Court decides this case on the preponderance of the evidence, regardless of the allocation of the burden of proof. Section 7491(a) is therefore inoperative.

## Section 469

### Passive Activity Loss Exemption

If a taxpayer is an individual, the "passive activity loss" for the taxable year shall not be allowed. Section 469(a). The term "passive activity loss" means the amount by which "the

aggregate losses from all passive activities" exceeds "the aggregate income from all passive activities" for the taxable year. Sec. 469(d)(1). Except for taxpayers entitled to treatment under section 469(c)(7), "Special rules for taxpayers in real property business", the term "passive activity" includes any rental activity. Sec. 469(c)(2). Rental activity is any activity "where payments are principally for the use of tangible property." Sec. 469(j)(8). Petitioners do not claim that the special rules of section 469(c)(7) apply to their return for 2000.

Section 469(i), with respect to rental real estate activities in which an individual actively participates, provides that the section 469(a) disallowance will not apply to a maximum of $25,000 of passive activity losses. An annual maximum of one $25,000 offset is allowed for all of a taxpayer's rental activities. Sec. 469(i)(2), (5). This nonapplication or "exemption" begins to phase out where the taxpayer's adjusted gross income (AGI) exceeds certain levels. Sec. 469(i)(3). The phaseout in petitioners' case is 50 percent of the amount by which their AGI (computed without regard to passive activity losses) exceeds $100,000. See sec. 469(i)(3)(A), (E)(iv). Computed as required, petitioners' adjusted gross income is $152,700, and the exemption is completely phased out.

Exception for Significant Personal Services

The parties agree that petitioners are entitled to claim the disputed $16,703 loss from their condominium units at the Summit as nonpassive on their Federal income tax return for 2000 only if: (1) Petitioners' condominium activity is described in section 1.469-1T(e)(3)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988); and (2) petitioners meet one of the material participation tests of section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).

Section 1.469-1T(e)(3)(ii)(B), Temporary Income Tax Regs., supra (B exception) provides that an activity generating payment for the use of tangible personal property is not rental activity (and therefore not per se passive) if the average period of customer use is 30 days or less and "significant personal services" are provided by or on behalf of the owner of the property in connection with making it available for customer use. Petitioners contend that they fall within the B exception.

Certain services are "excluded services" and are not considered in determining whether significant personal services are performed. Section 1.469-1T(e)(3)(iv), Temporary Income Tax Regs., supra. Services necessary to permit the lawful use of the property, and certain construction and repair services are

"excluded services".  Section 1.469-1T(e)(3)(iv)(B), Temporary Income Tax Regs., supra.  Also described as excluded services are:

> Services * * * similar to those commonly provided in connection with long-term rentals of high-grade commercial or residential real property (e.g., cleaning and maintenance of common areas, routine repairs, trash collection, elevator service, and security at entrances or perimeters).

For purposes of the B exception, "personal services" means only services performed by individuals.  Section 1.469-1T(e)(3)(iv), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).  In determining whether personal services are "significant", all relevant facts and circumstances, for example the frequency, type, and value of the services, are taken into account.  Id.

At trial, petitioner adduced both oral and documentary evidence of what he considers to have been the significant personal services provided by or on behalf of petitioners in making the property available for customer use.  During the examination of petitioners' joint return, petitioner provided a "Summary Tax Year 2000 Fact & Circumstances Condo #518 & #519" document purporting to show "personal services" requiring 1,016 hours to perform.  Petitioner, however, prepared for and presented at trial a second document showing the performance of 686 hours of personal services (summary for trial).

It is apparent from petitioner's testimony, and the two versions of the summary for 2000, that at best the summaries represent estimates of the time devoted to the performance of services associated with the condominium units. The Court will, however, for purposes of discussion, accept as accurate the summary for trial.

The Court views petitioners' summary for trial as describing five categories of activity: (1) Responding to telephone and Internet inquiries, and preparing and changing the Internet Web site; (2) booking guests, confirming reservations, and arranging for keys and parking passes; (3) travel by petitioners to and from the property; (4) repair and cleaning of the property; and (5) banking and bookkeeping.

Among excluded services are services similar to those provided in connection with long-term rentals of high-grade commercial or residential real property. Section 1.469-1T(e)(3)(iv)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988). Petitioners allege that 150 hours were spent responding to telephone and Internet inquiries to discuss the amenities of the units, their availability, and their desirability. An additional 64 hours are alleged to have been spent preparing and changing the Web site at A1 Vacations, which contained similar information. These activities can be fairly described as marketing. Similar services are provided in

connection with long-term rentals of high-grade commercial or residential real property. Regardless of the hours spent, such services are excluded services. Id.

Petitioner, or petitioner's agents, engaged in booking guests, confirming reservations and security deposits, and arranging for keys and parking passes, activities allegedly requiring 45 hours. The services may have been performed more frequently than at typical high-grade commercial or residential real properties. Petitioners have, however, provided little evidence as to whether the provided personal services were significant, especially in terms of their value and the relationship of that value to the amount charged for use of the properties.

Some of the reservation services were provided by Advisors for a 30-percent commission. But the same commission also paid for accounting services, advertising and promotion, cleaning equipment and supplies, an inspection prior to return of the damage deposit, and an annual inspection and inventory. Some of the services are excluded services. The Court is unable to determine how to allocate the commission to the various services provided. Petitioner provided no evidence of the value of the reservation services that he performed. The Court concludes that the reservation type services were not significant personal services. The travel by petitioners, a 1,570 mile round-trip

between their home and the condominium units, to attend meetings and to perform "maintenance" is said to have consumed 219 hours. The Court recognizes that travel in some circumstances can be a personal service performed in connection with making property available for customer use.  Commuting, however, is an inherently personal activity and as such does not constitute a "personal service" to customers.  See Fausner v. Commissioner, 413 U.S. 838, 839 (1973) ("We cannot read section 262 of the Internal Revenue Code as excluding such expense from 'personal' expenses"); Commissioner v. Flowers, 326 U.S. 465 (1946); sec. 1.262-1(b)(5), Income Tax Regs. (taxpayer's choice to live at a distance from his place of business is personal).

Petitioners claim involvement in 96 hours' worth of "comprehensive seasonal" repairs and maintenance of the property. Petitioners performed the services three times together and Dawnielle assisted him on two or three of the trips.[2]  The services may have been performed more frequently than at typical high-grade commercial or residential real properties. Petitioners, however, failed to provide any evidence of the value of the services they provided.  They did provide evidence that they paid maid and linen service costs of $2,364, a figure

---

[2]Petitioner testified that his wife was with him on three of the trips.  Petitioners' C.P.A. represented to Appeals Division in a letter dated September 12, 2003, that she made two trips to their properties.

representing about 8 percent of gross rentals.

In Example (4) of section 1.469-1T(e)(3)(viii), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), the taxpayer is engaged in the activity of owning and operating a residential apartment hotel where rentals are for more than 7 but less than 30 days. The taxpayer provides daily maid and linen service at no additional charge. Because the value of the maid and linen service is less than 10 percent of the amount charged to tenants, they are not significant personal services. The Court concludes that petitioners' cleaning and repair services, including maid and linen services, are not significant personal services.

Petitioner testified that they attended owners association meetings to protect their investment. They also received and deposited funds from customers, paid bills, and prepared income and expense summaries "for tax return preparation". Petitioners argue that these activities should be considered as personal services under the B exception.

The B exception addresses cases where significant personal services are provided by or on behalf of the owner of the property in connection with making it available for customer use. Petitioners press their argument by broadly interpreting the "in connection with" language of the exception. They fail, however,

to place enough emphasis on the "making the property available for use by customers" language qualifying "in connection with."

Legislative history of section 469 suggests that "section 1372(e)(5) (as in effect prior to the Subchapter S Revision Act of 1982) is relevant" in determining whether significant services are performed in connection with furnishing property. S. Rept. 99-313 at 741 n.32 (1986). The regulations provided that, generally, only services provided to the occupant "primarily for his convenience" are to be considered significant services. Stover v. Commissioner, 781 F.2d 137, 139 (8th Cir. 1986), affg. T.C. Memo. 1984-551; Bramlette Bldg. Corp. v. Commissioner, 52 T.C. 200, 203-204 (1969), affd. 424 F.2d 751 (5th Cir. 1970). Petitioners' attendance at owners association meetings and their banking activities have more to do with the ownership of property than with making the properties available to customers. The activities are not significant personal services.

Petitioners have also alleged that they incurred higher than normal owners association charges, dues, and assessments for additional amenities such as beach chair rentals, bars, a game room and a parking lot. Nearly all the services listed are of a type commonly rendered by luxury apartment complexes, especially on the Florida Coast. See Crouch v. United States, 692 F.2d 97, 101 (10th Cir. 1982).

The Court finds from the entire record that petitioners' condominium activity is not described in section 1.469-1T(e)(3)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988). Petitioners' condominium activity during 2000 was a rental activity, a passive activity, and respondent's denial of the deduction of passive activity losses is sustained.

Accordingly, the Court sustains respondent's determination that there is a deficiency in petitioners' income tax for the year.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for the section 6662(a) accuracy-related penalty. Taxpayers are liable for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to any substantial understatement of income tax. Sec. 6662(a) and (b)(2). A "substantial understatement" is an understatement for the taxable year exceeding the greater of 10 percent of the proper tax or $5,000. Sec. 6662(d)(1)(A). No penalty will be imposed with respect to any portion of any underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c). This determination is based on all the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Section 7491(c) imposes on respondent the burden of producing evidence to show that the section 6662(a) penalty is appropriate, but respondent need not produce evidence regarding reasonable cause.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  The Court has sustained respondent's determination of the deficiency.  Petitioners' understatement of tax exceeds the greater of 10 percent of the proper tax or $5,000.  The Court finds that respondent has satisfied the burden of production with respect to the accuracy-related penalty under section 6662(a).

Petitioners presented no evidence indicating reasonable cause for the understated income.  Accordingly, the imposition of the accuracy-related penalties is sustained.

The Court has considered all of the other arguments made by the parties, and to the extent that the arguments have not been specifically discussed above, they have been found to be moot or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing.

Decision will be

entered for respondent.